### STUART MCNICOL'S (dependents') CASE.

Suffolk. June 10, 1913. — September 12, 1913.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DE COURCY, JJ.

*Workmen's Compensation Act,* Injuries included, Dependent beneficiary, Procedure, Decree of Superior Court. *Superior Court. Practice, Civil,* Appeal, Exceptions, Decree.

Under St. 1911, c. 751, Part II, § 1, which provides that payments of compensation under the workmen's compensation act shall be made where an employee "receives a personal injury arising out of and in the course of his employment," in order that a claim for such compensation should be sustained, it must appear that the injury had its origin in a risk connected with the employment and that it flowed from that source as a natural consequence.

Injuries, resulting in death, received by a checker in the employ of a firm of import-
ers, while doing his work at a dock, from blows or kicks given him by a fellow
workman in "an intoxicated frenzy and passion," where such fellow workman
was known to the superintendent in charge of the work to have the habit of drink-
ing to intoxication and when in that condition to be quarrelsome, dangerous and
unsafe to work with, and knowingly was permitted by such superintendent to
continue to work on the day of the injury while in such a condition of intoxica-
tion, are injuries arising out of and received in the course of the workman's em-
ployment within the meaning of the workmen's compensation act.

Where compensation is to be made under the workmen's compensation act for
injuries which resulted in the death of a workman, and it appears that the work-
man left a widow, and a daughter of himself and such widow under the age
of eighteen years, both living with him at the time of his death, the provisions
of St. 1911, c. 751, Part II, § 7, that the widow shall be conclusively presumed
to have been wholly dependent upon her deceased husband, and that there shall
be a like presumption in favor of such a minor child, "there being no surviving
dependent parent," make the dependency of the child conditional on the non-
existence of a surviving dependent parent, so that the whole of the payment is
to be made to the widow.

Cases arising under the workmen's compensation act can be brought from the
Superior Court before this court only by appeal and not by a bill of exceptions.
Following *Gould's Case, ante,* 480.

St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, which provides
that a party in interest may present certified copies of a decision of the Industrial
Accident Board under the workmen's compensation act to the Superior Court,
"whereupon said court shall render a decree in accordance therewith," does not
make the action of the Superior Court a mere perfunctory registration of approval
of the decision of the Industrial Accident Board, but means that the Superior
Court shall exercise its judicial function by entering such a decree as will en-
force the legal rights of the parties as disclosed by the facts appearing on the
record.

RUGG, C. J. This is a proceeding under St. 1911, c. 751, as
amended by St. 1912, c. 571, known as the workmen's compensa-
tion act, by dependent relatives for compensation for the death of
Stuart McNicol.

1. The first question is whether the deceased received an "in-
jury arising out of and in the course of his employment," within
the meaning of those words in Part II, § 1 of the act. In order that
compensation may be due the injury must both arise out of and
also be received in the course of the employment. Neither alone
is enough.

It is not easy nor necessary to the determination of the case at
bar to give a comprehensive definition of these words which shall
accurately include all cases embraced within the act and with pre-
cision exclude those outside its terms. It is sufficient to say that
an injury is received "in the course of" the employment when it

comes while the workman is doing the duty which he is employed
to perform.  It "arises out of" the employment, when there is
apparent to the rational mind, upon consideration of all the cir-
cumstances, a causal connection between the conditions under
which the work is required to be performed and the resulting in-
jury.  Under this test, if the injury can be seen to have followed as
a natural incident of the work and to have been contemplated by
a reasonable person familiar with the whole situation as a result of
the exposure occasioned by the nature of the employment, then it
arises "out of" the employment.  But it excludes an injury which
cannot fairly be traced to the employment as a contributing proxi-
mate cause and which comes from a hazard to which the work-
men would have been equally exposed apart from the employment.
The causative danger must be peculiar to the work and not com-
mon to the neighborhood.  It must be incidental to the character
of the business and not independent of the relation of master and
servant.  It need not have been foreseen or expected, but after the
event it must appear to have had its origin in a risk connected with
the employment, and to have flowed from that source as a rational
consequence.

The exact words to be interpreted are found in the English work-
men's compensation act, and doubtless came thence into our act.
Therefore decisions of English courts before the adoption of our
act are entitled to weight.  *Ryalls* v. *Mechanics' Mills*, 150 Mass.
190.  It there had been held that injuries received from lightning
on a high and unusually exposed scaffold, *Andrew* v. *Failsworth
Industrial Society*, [1904] 2 K. B. 32; from the bite of a cat habitu-
ally kept in the place of employment, *Rowland* v. *Wright*, [1909]
1 K. B. 963; from a stone thrown by a boy from the top of a bridge
at a locomotive passing underneath, *Challis* v. *London & South-
western Railway*, [1905] 2 K. B. 154; and from an attack upon a
cashier travelling with a large sum of money, *Nisbet* v. *Rayne &
Burn*, [1910] 2 K. B. 689, all arose in the course and out of the
employment, while the contrary had been held as to injuries re-
sulting from a piece of iron thrown in anger by a boy in the same
service, *Armitage* v. *Lancashire & Yorkshire Railway*, [1902] 2 K. B.
178; from fright at the incursion of an insect into the room,
*Craske* v. *Wigan*, [1909] 2 K. B. 635; and from a felonious assault
of the employer, *Blake* v. *Head*, 106 L. T. Rep. 822.

The definition formulated above, when referred to the facts of these cases, reaches results in accord with their conclusions. Applying it to the facts of the present case, it seems plain that the injury of the deceased arose "out of and in the course of his employment." The findings of the Industrial Accident Board in substance are that Stuart McNicol, while in the performance of his duty at the Hoosac Tunnel Docks as a checker in the employ of a firm of importers, was injured and died as a result of "blows or kicks administered to him by . . . [Timothy] McCarthy," who was in "an intoxicated frenzy and passion." McCarthy was a fellow workman who "was in the habit of drinking to intoxication, and when intoxicated was quarrelsome and dangerous, and unsafe to be permitted to work with his fellow employees, all of which was known to the superintendent Matthews," who knowingly permitted him in such condition to continue at work during the day of the fatality, — which occurred in the afternoon. The injury came while the deceased was doing the work for which he was hired. It was due to the act of an obviously intoxicated fellow workman, whose quarrelsome disposition and inebriate condition were well known to the foreman of the employer. A natural result of the employment of a peaceable workman in company with a choleric drunkard might have been found to be an attack by the latter upon his companion. The case at bar is quite distinguishable from a stabbing by a drunken stranger, a felonious attack by a sober fellow workman, or even rough sport or horseplay by companions who might have been expected to be at work. Although it may be that, upon the facts here disclosed, a liability on the part of the employer for negligence at common law or under the employers' liability act might have arisen, this decision does not rest upon that ground, but upon the causal connection between the injury of the deceased and the conditions under which the defendant required him to work. A fall from a quay by a sailor while returning from shore leave, *Kitchenham* v. *Owners of S. S. Johannesburg*, [1911] 1 K. B. 523; *S. C.* [1911] A. C. 417; a sting from a wasp, *Amys* v. *Barton*, [1912] 1 K. B. 40; and a frost bite, *Warner* v. *Couchman*, [1912] A. C. 35, all have been held to be injuries not "arising out of" the employment. But we find nothing in any of them in conflict with our present conclusion. Nor is there anything at variance with it in *Mitchinson* v. *Day*

*Brothers,* [1913] 1 K. B. 603, where it was held that injuries resulting from an assault by a drunken stranger upon an employee engaged at his work on the highway did not arise out of the employment. That was a quite different situation from the one now before us.

2. It is necessary to determine the persons to whom the payments provided for in the act shall be made. It may be assumed from this record that no personal representative of the deceased has been appointed. He left a widow and a minor daughter presumably under the age of eighteen years. Part II, § 7, provides that a wife conclusively shall be presumed to be wholly dependent upon a deceased husband, while a like presumption exists in favor of "a child or children under the age of eighteen years . . . upon the parent with whom he is or they are living at the time of the death of such parent, there being no surviving dependent parent." The natural meaning of this sentence is that the conclusive presumption of dependency of children is conditioned upon the non-existence of a surviving dependent parent. There are no other words in this or other sections of the act which control its plain significance. The use of the plural word "dependents" in several places in §§ 6 and 8 in Part II finds ample justification in the many conceivable instances where several persons may be entitled to share in the payments when there is no surviving husband or wife.

The provisions of St. 6 Edw. VII, c. 58, § 13, as to the dependents entitled to payments are wholly different from those of our own act, and decisions of the English courts have no bearing on the case at bar.

3. The act does not contemplate the allowance of bills of exceptions, and that presented in the case at bar must be dismissed. The case is properly here on appeal. *Gould's Case, ante,* 480.

4. There is error in the decree. In the decree entered in the Superior Court the ruling of the board of arbitration was followed, providing that the payments should be divided equally between the widow and the dependent minor daughter, rather than that of the Industrial Accident Board that the widow alone was entitled to the payments. This was not in accordance with the act, as has been pointed out. Apparently the judge of the Superior Court exercised his own judgment as to the kind of decree which the law

required upon the facts found. This is correct. Part III, § 11, of the act as amended by St. 1912, c. 571, § 14, provides that when copies of the "decision of the board . . . and all papers in connection therewith" have been transmitted to the Superior Court, "said court shall render a decree in accordance therewith." This means such a decree as the law requires upon the facts found by the board. It does not make the action of the Superior Court a mere perfunctory registration of approval of the conclusions of law reached by the Industrial Accident Board. The section in question doubtless was enacted because of the intimation in the *Opinion of the Justices,* 209 Mass. 607, 612, to the effect that the decisions of the board must be enforced by appropriate proceedings in court. The obligation placed upon the Superior Court by the requirement to enter a decree in accordance with the decision is to exercise its judicial function by entering such decree as will enforce the legal rights of the parties as disclosed by the facts appearing on the record.

It follows that the decree must be reversed and a new decree entered as required by this opinion.

*So ordered.*

The case was submitted on briefs.

*E. C. Stone,* for the insurer.
*A. S. Apsey,* for the dependents.