FRANK T. MILLIKEN'S (dependent's) CASE.

Suffolk.   November 13, 1913. — January 8, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Workmen's Compensation Act.*

The death of a teamster from pneumonia brought on by his falling into a swamp and lying there all night, after having suffered a loss of memory and having alighted from his team and wandered away from it, when by direction of his employer he was driving the team to his employer's stable to put it up for the night, even if it is the result of a personal injury incurred "in the course of his employment," is not the result of an injury "arising out of" such employment, and therefore the dependent of such deceased teamster is not entitled to compensation under St. 1911, c. 751, Part II, §§ 1, 6.

LORING, J.  This is an appeal from a decree of the Superior Court * based on a decision of the Industrial Accident Board ordering the insurer to pay $1,950 for the death of Frank T. Milliken.  The facts found by the board were these:

Milliken, at the time of his death in October, 1912, and for some twenty-seven years before that time, had been a driver in the employ of A. Towle and Company, the insured, who were teamsters.  Some four or five years before his death Milliken, in the course of his employment, fell from his wagon, striking on his head.  This caused *inter alia* an impairment of memory.  One afternoon in July, 1912 (three months before his death), Milliken lost his memory while driving his employers' wagon in Boston, and for half an hour was unable to remember where he was or to identify the streets in which he was driving, although they were streets with which he was "thoroughly familiar."  During the day of October 8, 1912, from a similar failure of memory Milliken did not call for packages, as his duties required, and reported (contrary to the fact) that he had not received them because they were not ready.  Thereupon he was directed to drive his wagon to his employers' stable in Charlestown to be put up for the night.  Driving his wagon to the stable for the night was part

* Made by *Morton*, J.

of Milliken's regular work. This order was given to Milliken, at about five o'clock in the afternoon at his employers' Boston office in Matthews Street near Post Office Square. "At some place between Post Office Square and the stable in Charlestown he was seized with such a loss of memory and mental faculties that he was unable to recognize streets and places, and on account of such disordered mental condition he became lost and unable to direct the horse to the stable." About eleven o'clock that night Milliken was seen driving the wagon in a private way in Burlington and was helped back to the public highway, whereupon he drove away in the direction of Lowell. At this time Milliken would not speak. At about six o'clock the following morning Milliken was found lying in a swamp in Woburn and — with the exception of his head — covered with mud and water. His hat was found on the "adjacent road" some two hundred feet away, and the horse and wagon were found "by the side of said road about half a mile distant in the direction of Boston." Milliken was taken to a hospital at Woburn, where he died on October 14, without recovering his memory. He "spoke in a delirium only of looking for his horse." The cause of his death was pneumonia, brought on by cold and exposure while lying in the swamp.

The Industrial Accident Board found: "That the loss of memory with which the employee, Milliken, was seized was not in itself a fatal disorder, and that he would not have met his death as he did but for the horse and wagon and his effort to get them to the stable."

The dependent's contention is that Milliken's death was caused by pneumonia brought on by his falling into the swamp and lying there all night; that under these circumstances falling into the swamp and lying there all night was a personal injury which caused his death; and for this she relies on *Alloa Coal Co.* v. *Drylie*, 50 S. L. R. 350, and *Kelly* v. *Auchenlea Coal Co.* 48 S. L. R. 768.

The fact that Milliken "would not have met his death as he did but for the horse and wagon and his effort to get them to the stable," goes no farther than to show that the personal injury suffered by Milliken was a personal injury "in the course of his employment."

The difficulty in the case arises from the provision that the personal injury must be one "arising out of" as well as one "in the course of his employment."

It was held in *McNicol's Case*, 215 Mass. 497, that the provision limiting the personal injuries for which compensation is to be made to those "arising out of" the employee's employment means that the nature and conditions of the employment must be such that the personal injury which in fact happened was one likely to happen to an employee in that employment. In that case it was said that there must be a "causal connection" between the employment and the injury.

There is nothing in the employment of driving a wagon which makes it likely that the employee will alight from his wagon, wander to and fall into a swamp, and lie there all night. The distinction between the case at bar and a case within this clause of the act is well brought out by what is suggested by a remark of the majority of the Industrial Accident Board. If the horse driven by Milliken had run away and Milliken had been thereby thrown out and killed, the personal injury in fact suffered in that case would have been one which from the nature of his employment would be likely to arise, and so would be one "arising out of his [the employee's] employment." But as we have said, there is nothing in the employment of driving a wagon which makes it likely that the employee will alight from his wagon, wander to and fall into a swamp, and lie there all night. *Sneddon* v. *Greenfield Coal & Brick Co.* 47 S. L. R. 337, much relied on here by the dependent, is another case which brings out the distinction. There a miner got lost in the underground ways of a mine and was killed by the exhaust steam from an engine which was not fenced off. See also *Wicks* v. *Dowell & Co.* [1905] 2 K. B. 225.

We find nothing in the other cases relied on by the dependent which calls for notice.

It seems plain that, if Milliken's death was caused by a personal injury, it was the one which happened some four or five years before the occurrence here complained of and before the workmen's compensation act was passed. At that time he fell from his wagon and striking on his head suffered as a result "an impairment of his memory."

The decree of the Superior Court appealed from is reversed,

and a decree should be entered declaring that the dependent has no claim against the insurer.

*So ordered.*

*W. H. Hitchcock,* (*L. C. Doyle* with him,) for the insurer.
*W. H. Sullivan,* for the dependent.