## ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

---

OTIS McPHEE's (dependent's) CASE.

Suffolk.    March 15, 1915. — September 16, 1915.

Present: RUGG, C. J., LORING, BRALEY, & PIERCE, JJ.

*Workmen's Compensation Act,* Filing of appeal, Injury arising out of employ-
ment, Personal injury.    *Proximate Cause.*

The provision of the workmen's compensation act contained in its amendment by
St. 1912, c. 571, § 14, "that there shall be no appeal from a decree based upon
an order or decision of the board which has not been presented to the court
within ten days after the notice of the filing thereof by the board," does not
mean that the appeal actually must be brought to the attention of a judge of the
Superior Court within the ten days but only that the required papers shall be
filed as a part of the records of the court within that time.

One employed as a superintendent of an amusement resort near a public beach,
who as a part of his duty as such employee organized a fire brigade to protect
the property of his employer and who also was a regular member of the fire
department of the town in which the resort was situated and received for his
services as such member $50 a year and was liable to a fine of fifty cents for an
inexcusable absence from a fire, when a fire broke out in a garage about forty
feet from the property of his employer, went to the garage for the double pur-
pose of extinguishing the fire and protecting the buildings of his employer,
and he with about a dozen men of his employer's volunteer fire department took
the employer's chemical engine to the garage and remained there until the fire
was put out.    In working with the chemical engine such employee became
saturated by smoke and drenched with water, and, when the chemicals of the
engine were exhausted, he assisted the town fire department by working with
a hose at the top of a ladder.    The inhaling of smoke and the drenching with
water while he was working on the chemical engine, the effects of which might

have been aggravated by his exposure while working with the hose of the town fire department, brought on lobar pneumonia that resulted in his death. *Held,* that, in a claim made by his dependent under the workmen's compensation act, a finding was warranted that the death of the employee resulted from personal injury that arose out of his employment.

An injury to an employee from inhaling damp smoke and being drenched with water when assisting in extinguishing a fire, which resulted in lobar pneumonia, can be found to have been a "personal injury" within the meaning of St. 1911, c. 751, Part II, § 1.

RUGG, C. J. The dependent of the deceased employee has suggested a question whether the case is rightly here, because it is provided by the workmen's compensation act as amended by St. 1912, c. 571, § 14, "that there shall be no appeal from a decree based upon an order or decision of the board which has not been presented to the court within ten days after the notice of the filing thereof by the board." This does not mean that the case must be actually brought to the attention of a judge of the Superior Court within that time. It is a compliance with the statute if the required papers are presented to the court in the sense of being filed as a part of its records. The case is here rightly.

Otis McPhee was employed in the summer of 1913 as superintendent by the Atlantic Park Company, a subscriber under the workmen's compensation act. The business of his employer was that of operating an amusement resort near Nantasket Beach in the town of Hull. In the performance of his duty as such employee, McPhee organized a fire brigade to protect the property of his employer. He was also a regular member of the fire department of the town of Hull and received for his services in that connection $50 per year, and was liable to a fine of fifty cents for an inexcusable absence from a fire. On the evening of June 22, 1913, a fire broke out in a garage distant about forty feet from the property of the subscriber.

The arbitration committee, whose findings have been confirmed by the Industrial Accident Board, reported that "McPhee, in his capacity as superintendent and as organizer of the volunteer fire department, went to the garage, for the double purpose of extinguishing the fire and protecting the buildings of his employer, the Atlantic Park Company, from the danger caused by said fire. McPhee was a volunteer member of the Hull fire de-

partment, it is true, but as ground superintendent for the sub-scriber, the Atlantic Park Company, he was in charge of the volunteer fire department of that company and was subject to the call of duty at the time the fire began and remained on duty in connection with his work as superintendent of the grounds and buildings, and as director of the park's volunteer fire force, until the fire at the garage was extinguished and all danger of fire at the garage to the property in his care had passed. He, with about a dozen men, took the Atlantic Park Company's chemical engine to the garage, with the approval of the general manager of that company, who stated that it was McPhee's duty to do that. 'In attempting to put out the fire, I considered that they were doing their duty by me, and acting as my employees in so doing,' said general manager Dodge; so that there can be no question as to McPhee being in the performance of the duty for which he was hired when he and his men ran with the chemical engine to the garage and remained there until the fire was put out. The fact that McPhee, at one time, according to the testi-mony of several of the volunteer members of the Hull fire depart-ment, was at the top of a ladder endeavoring to assist in putting out the fire, does not remove him from the sphere of his employ-ment as superintendent and director of the park's volunteer fire-men. They had done all they possibly could with the chemical engine; McPhee had been drenched with water and saturated with smoke; the personal injury thus incurred had begun its in-vasion of his system, ultimately causing lobar pneumonia and death in an unbroken chain of causation with said personal in-jury; whatever exposure and harm resulted from his assistance with the hose provided by the Hull fire department, at the top of the ladder, as testified to by several witnesses, was simply accumulative, the drenching and saturating received by the em-ployee, McPhee, while in the garage with the chemical engine, being the connecting link between his employment as superin-tendent of the grounds and director of its volunteer fire depart-ment and his death."

The finding for the dependent was confirmed by a decree of the Superior Court * and the insurer's appeal brings the case here.

This finding stands upon the same footing as a verdict of a

* Entered by order of *Jenney,* J.

jury or a finding of a judge and will not be set aside unless wholly unsupported by the evidence. *Pigeon's Case,* 216 Mass. 51.

There was evidence upon which this finding may rest. While the deceased was a member of the town fire department and as such required to attend the fire, it well might be that his paramount duty was owed to the subscriber to protect its property from destruction by fire and to prevent thereby a panic among its patrons and the disaster which might ensue. It does not seem to us possible to say as matter of law that when he had exhausted the chemical of the subscriber and began working in connection with the fire apparatus of the town, he ceased acting primarily in the interests of his employer, who was the subscriber, and began working exclusively for the town. The interests of his general employer in the extinguishment of a fire in such threatening proximity to its property well may have been found to have been so dominant as to absorb the exclusive attention of McPhee and to have rendered him in the direction of his own conduct chiefly concerned to act for its interests as to the means employed and the result to be achieved in the particular service of extinguishing the fire. If this was so, then his efforts were directed to the promotion of the business of that general employer even though it happened that at the same time he was acting in accordance with his obligation to the town fire department. But under such circumstances the latter would be accidental and subsidiary, while the substantial and preponderant factor controlling his action would be the duty owed to his employer, who was the subscriber. *Tornroos* v. *R. H. White Co.* 220 Mass. 336. That the injury of the deceased was received "in the course of his employment" within the meaning of those words in the act cannot be pronounced unsupported by the evidence.

The insurer argues that the injury did not arise out of the employment. It relies in this regard upon that part of the opinion in *McNicol's Case,* 215 Mass. 497, at page 499, where it was said, "an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment," does not arise out of the employment. But these words do not fairly describe what may have been found to be the facts here. It well may have been inferred that the im-

mediate entrance by the deceased into the smoke of the burning garage with the chemical engine of the subscriber before the arrival of the town apparatus was a peril encountered solely by reason of that employment and not because of his membership in the public fire department. It might have been found that under the test laid down in *McNicol's Case* there was a causal connection between the conditions under which he was required to perform his work and the resulting injury. The distinction between the case at bar and *Milliken's Case*, 216 Mass. 293, *Plumb v. Cobden Flour Mills Co. Ltd.* [1914] A. C. 62, and like decisions is plain. The circumstance that the deceased was not upon the estate of his employer at the time of receiving his injuries is of slight significance. He was not absent upon his own business as in *Parker v. Owners of Ship Black Rock*, [1915] A. C. 725, but directly upon the business of his employer in attempting to protect its property from danger by fire.

The inhalation of damp smoke and drenching with water resulting in lobar pneumonia might have been found to be a "personal injury" within St. 1911, c. 751, Part II, § 1. *Hurle's Case*, 217 Mass. 223. See *Coyle v. John Watson, Ltd.* [1915] A. C. 1.

*Decree affirmed.*

The case was submitted on briefs.

*H. S. Avery,* for the insurer.

*T. H. Buttimer,* for the dependent widow.