WALTER ROBINSON'S CASE.

Suffolk.   November 14, 1935. — November 26, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Workmen's Compensation Act,* Injuries to which act applies.

In proceedings under the workmen's compensation act, a finding that an injury sustained by the employee when his foot was frozen while he was at work outdoors on a very cold day arose out of his employment was not warranted on evidence that to a large extent he was free to choose his hours of work, and was not obliged to remain continually at work and exposed to the cold but could take refuge from it indoors whenever he wished.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

A decree dismissing the claim was entered by order of *Fosdick*, J. The employee appealed.

*E. E. Clark,* for the claimant.

*H. B. White,* for the insurer.

CROSBY, J.   This is an appeal by an employee from a final decree entered in the Superior Court dismissing a claim for compensation under the workmen's compensation act.

The facts found by the board member were as follows: The claimant was employed by the town of Stoughton, and his duties were to keep the town square clean. He had no regular hours of employment, but was expected to have his work completed before the business day commenced. On February 8, 1934, he started to work between four and five o'clock in the morning as was his custom. The testimony was to the effect that it was a very cold day; that the employee froze his right foot and later gangrene set in

and it was necessary to amputate the leg above the knee; that he was under no direct supervision, and came and went as it suited him; that he was "free to go in and out of the cold and to protect himself and that on this day he had spent some time in a store for the purpose of avoiding the cold." Upon all the evidence the single member found that the employee was not obliged to be continually at work in the open; that he had an opportunity to protect himself, "and that the condition of his employment and its nature did not in fact expose him to a greater danger of being frozen than the ordinary out of door worker." The single member dismissed the claim for compensation.

The Industrial Accident Board, upon a claim for review, found upon the evidence that the employee received a personal injury arising out of and in the course of his employment on February 8, 1934, "when he sustained a frostbite as a result of exposure to severe cold, and that as a result of such injury his right foot became gangrenous and necessitated amputation of the leg to the knee"; that the nature of the employee's work was such that he was expected to perform his duties daily during the early morning "at hours appropriate to the efficient performance of such work; that on the morning of the injury he did just as he had done on the usual work day; that he was especially exposed on that day to the elements in a greater degree than the ordinary person or outdoor worker in that vicinity; that he had an underlying condition of both feet which made him peculiarly susceptible to the effects of severe cold weather; and that he sustained the frostbite of his right foot on that date before he had become aware of the effect of the cold so as to protect himself against the result which occurred." The board further found that the employee's injury arose out of an ordinary risk of the street, and awarded compensation accordingly.

Thereafter the case was heard by a judge of the Superior Court, and a decree was entered that the employee "did not sustain personal injuries arising out of the course of his employment," and his claim for compensation was dismissed.

The employee testified that he was sixty-nine years of age and had been employed by the town of Stoughton about three and one half years before his foot was frozen; that he went to work generally about four o'clock in the morning; that the morning of February 8, 1934, was unusually cold; that at six-thirty that morning he first noticed there was something wrong with his right foot; that it "felt cold and began to tickle"; that he stamped on it and did not think anything more about it; that his foot was treated by a physician and later was amputated. On cross-examination the employee testified that his work for the town consisted of cleaning the town square by keeping the gutters free from brush, papers, twigs and anything that came down from the trees; that there was a cobbler's shop on Main Street that he would go into when it was cold; that he went in there on the morning he froze his foot; that he could go into the "Town House" if it was snowing, raining or was cold; that he could go into the "Town House" when he wanted to; that on the morning of February 8, 1934, he went into the cobbler's shop about half past six or seven o'clock, and might have remained there twenty minutes; that he used to go in there before this morning; that when he came out of this shop he probably worked for half an hour. He further testified that he had been doing the same work for the town for about three and a half years; that sometimes he worked only three or four hours a day; that he could do the cleaning work when he wanted to; and that "His time was his own as to when he did the work."

There can be no doubt that the employee, when he froze his foot, was acting in the course of his employment. The question remains as to whether there was any evidence that his injury arose out of his employment. It was an unusually cold day when he froze his foot. An injury cannot be found to have arisen out of the employment unless the employment was a contributing proximate cause. "The causative danger must be peculiar to the work and not common to the neighborhood." *McNicol's Case*, 215 Mass. 497, 499. *Donahue's Case*, 226 Mass. 595, 597. In

the performance of his work there is nothing to show that the employee was exposed to any greater risk of freezing his foot than the ordinary person engaged in outdoor work in cold weather. *Dougherty's Case*, 238 Mass. 456. *McCarthy's Case*, 230 Mass. 429. *Moran's Case*, 234 Mass. 566. The testimony of the employee shows that he was not obliged to be continually at work, that some days he worked longer than others, that sometimes he worked only three or four hours in a day, but that he averaged six or seven hours. It also appeared from his testimony that he was not required to be constantly out of doors, but that he had ample opportunity to protect himself from the cold by going to the "Town House" or to the cobbling shop, where he was accustomed to go and where he went the morning his foot became frozen. There seems to be no reason why he should have remained out of doors on the day in question when he was not required unnecessarily to expose himself to the cold. James A. Walker, the employer's foreman, testified that the number of hours the employee should work was up to the employee; that he went out any time he wanted to, and when he got the work done he would quit; that it usually took him about four hours. This witness further testified that there was nobody directly over the employee to tell him when to stop or start work, and no one to stop him from going to the "Town House" when he wanted to. It is plain that his injury did not arise out of his employment within the meaning of the workmen's compensation act. The case is governed in principle by what was decided in *Dougherty's Case*, 238 Mass. 456. The following cases are distinguishable in their facts from the case at bar: *McManaman's Case*, 224 Mass. 554; *McCarthy's Case*, 232 Mass. 557; *Ferrara's Case*, 269 Mass. 243; *Shute's Case*, 290 Mass. 393.

*Decree affirmed.*