BRODERICK COMPANY *v.* FLEMMING ET AL.

[No. 17,448. Filed March 6, 1946. Rehearing Denied April 12, 1946. Transfer Denied, and Order of May 29, 1946 Granting Transfer Vacated, September 27, 1946.]

*George C. Forrey, III, Burrell Wright,* and *Jacob S. White,* all of Indianapolis, for appellant.

*Benadum & Cecil,* of Muncie, for appellees.

HAMILTON, J.—This is an appeal from an award rendered by the Full Industrial Board of Indiana in favor of the appellees as the surviving dependents of one George Flemming, deceased, who was accidentally killed on May 13, 1944, during the course of his employment with the appellant.

The sole question presented for our determination is whether there exists in the record any evidence from which the Industrial Board could properly have determined that the accidental death of George Flemming "arose out of the employment."

The evidence is uncontroverted and establishes the following facts:

On, and for at least two months prior to, May 13, 1944, the deceased, George Flemming, was in the employ of appellant at its plant located at Muncie, Indiana. He was employed as a general cleanup man, and a part of

his duties consisted in assisting one Fred Meer in hauling waste grease contained in a large metal tank from the premises of appellant to a dump north of the city of Muncie. Meer was an independent contractor employed by appellant to haul waste grease and other liquid refuse from appellant's premises, and for such purpose he owned and operated a Ford V-8, one and one-half ton dump motor truck.

Appellant always sent one of its employees with Meer to assist in scraping the waste grease out of the tank at the dumping place. George Flemming had accompanied Meer and assisted him in hauling and unloading waste grease upon several occasions prior to May 13, 1944. The helper always rode with Meer in the cab of his truck upon such occasions. During the morning of May 13, 1944, the deceased, George Flemming, had been working with another employee in appellant's plant when a breakdown of machinery left him temporarily out of a job. Flemming went to his foreman and reported that he had broken down and inquired: "What do you want me to do now?" The foreman told Flemming: "If you are done, go up to the front end and get the big grease tank and hook onto it good and straight and carry it down and set it by the west door and wait till Fred takes this last load of carbide out and changes the tank and empties that and you put that tank on and go with him to Nottingham dump and help clean it out." Pursuant to these orders Flemming entered appellant's plant, attached a large moving crane to the waste grease tank referred to by the foreman, and moved the grease tank to the west door of appellant's building and set it down at the door to wait until Meer came with his truck to load and then go to the Nottingham Dump.

The conversation between Flemming and his foreman

occurred about twenty minutes before the accident here-inafter referred to.

After depositing the grease tank at the west door of the building as directed, Flemming stepped outside the plant and seated himself beside two other employees who were taking a fifteen-minute rest as permitted by appellant's working rules and regulations.

When Flemming sat down outside of the west door, he inquired of one of the employees whether or not "Fred [Meer] had been in," to which question the employee replied: "No, not as I know of." A few minutes after this conversation a motor oil truck entered appellant's premises and traveled east along a driveway which ran east and west through appellant's plant premises. This motor truck was described as being a Chevrolet semi-tractor job, having six wheels and a built-on oil tank approximately 25 feet in length with a red cab on the tractor and the oil tank painted aluminum.

When the oil truck entered the premises, the deceased arose without saying anything to his fellow employees, and walked or ran across the yard space between appellant's building, where he had been sitting awaiting for Meer to appear, and the driveway upon which the truck was traveling east through appellant's premises, across the driveway in front of the oil truck and waited for it to approach. There is no evidence in the record showing the speed at which the oil truck was traveling. The only eye witness to testify stated that, as the truck approached, Flemming threw up one of his hands as if to reach for something, then he was seen to fall, and the wheels of the oil truck ran over Flemming, crushing his skull and killing him instantly.

No witness testified to hearing Flemming call or say anything to the truck driver, and there is no direct evidence as to Flemming's motive or purpose in passing

in front of the oil truck and throwing up his hand as the truck approached.

The oil truck belonged to a firm at Portland and was delivering a load of fuel oil to appellant's plant. This same truck had made several trips through appellant's premises prior to May 13, 1944, and there was no evidence in the record to show that Flemming and the driver of the truck were acquainted with each other. The evidence discloses that from the time Flemming was ordered by the foreman to place the grease tank at the west door of appellant's building until he met with the fatal accident, a period of approximately 20 minutes elapsed, and that during said period of time he had no work or duties to perform except to wait until Fred Meer drove in with his dump truck. Flemming had not been told to wait at any particular place. He had traveled a distance of approximately 125 feet from the west door, where he was seated waiting for the Meer truck, to the place where he met his death.

The fatal accident occurred at about 1:50 p. m., May 13, 1944, at a place upon the appellant's premises where Flemming was employed and during his working hours and while he was about appellant's business, although his duties did not require his presence at the particular spot where he met with the fatal accident and there is no direct evidence to explain why Flemming went to that particular place.

The foregoing facts are sufficient to sustain the finding of the Full Industrial Board that the death of appellant's employee, George Flemming, was a result of an accident and that such accident arose in the course of his employment.

This leaves for determination the sole question of

whether the fatal injuries "arose out of" his employment.

Appellant contends that Flemming's accidental death did not "arise out of the employment" for the reason that he had stepped out of his employment when he went across the driveway in front of the approaching oil truck. This contention is based upon the premise that, because there is no direct evidence in the record to explain why Flemming went to the place where the accident occurred, the only inference to be drawn from the evidence is that he had some personal reason for going to a spot where he had no duty to perform at that particular time and place.

The words "arising out of the employment," as contained in the Indiana Workmen's Compensation Act, § 40-1202 *et seq.*, Burns' 1940 Replacement, have been construed by this court many times, and we feel that it will be helpful in determining the question presented to review a few of the decisions.

In the case of *Holland, etc., Sugar Co.* v. *Shraluka* (1917), 64 Ind. App. 545, 116 N. E. 330, the facts were that an employee was working on the third floor of the employer's premises when another person on the second floor of the building called to him and informed him that he was wanted at the telephone. In response to this call the employee started to walk down the stairway from the third to the second floor and in so doing slipped and fell and was injured. In passing upon the correctness of an award made by the Full Industrial Board, awarding compensation to the employee, this court said:

"The courts are practically unanimous in holding that the words 'by accident arising out of and in the course of the employment,' as used in workmen's compensation acts, should be given a broad and

liberal consideration in order that the humane purpose of their enactment may be realized. . . .

"In general terms an accident may be said to arise out of the employment when there is a causal connection between it and the performance of some service of the employment. *McNicol's Case* (1913), 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A 306; *Milliken's Case* (1914), 216 Mass. 293, 103 N. E. 898. The causal relation is established when the accident is shown to have arisen out of a risk which a reasonable person might have comprehended as incidental to the employment, at the time of entering into the employment; or, when the evidence shows an incidental connection between the conditions under which the employe works and the resulting injury. . . .

"Such acts as are necessary to the life, comfort and convenience of the workman while at work, though personal to himself, and not technically acts of service, are incidental to the service; and an accident occurring in the performance of such acts is deemed to have arisen out of the employment. Such acts are regarded as inevitable incidents of the employment, and accidents happening in the performance of such acts are regarded as arising out of and in the course of the employment. From the foregoing propositions it follows logically that an accident to a workman may arise out of and in the course of his employment, within the meaning of the statute, even though he be not actually working at the time of the accident."

Again, in the case of *In re Harraden* (1917), 66 Ind. App. 298, 118 N. E. 142, this court had under consideration the question as to whether or not a traveling salesman who was injured as a result of falling upon an icy street in a city where his duties required his presence was entitled to compensation because of an accidental injury "arising out of his employment." In deciding this question the court says:

"Where the employment of the injured person requires him to be at the place where his injury

is received, and he is in fact at such place in pursuance of the discharge of the duties of his employment, the risk thereby encountered is held to be incident to such employment, though the injury may have resulted from conditions produced by the weather to which persons generally in that locality were exposed . . .

"By reason of his employment he was at the place where he was injured. He was where his employment took him and the hazard of the icy street was incidental to such employment. . . . The facts admit of no other inference but that for his employment he would not have been in that locality at the time of his injury. His employment was therefore a contributing proximate cause of his injury. By reason of it he was exposed to a hazard which in all reasonable probability he would not otherwise have encountered."

In the case of *Empire Health, etc., Ins. Co.* v. *Purcell* (1921), 76 Ind. App. 551, 132 N. E. 664, this court had under consideration the correctness of an award made by the Industrial Board to an insurance agent who received injuries while calling upon an insured for the purpose of collecting a premium due on a policy of insurance. The court says:

"The evidence warrants the inference that his injury resulted from conditions brought about by reason of his employment and because he was in that locality at the time in question. As was said by the court in the Harradan case, *supra:* 'The facts admit of no other inference but that for his employment he would not have been in that locality at the time of his injury. His employment was therefore a contributing proximate cause of his injury.' . . .

"When one, so situated and employed as was appellee, receives an injury by reason of the hazards and conditions surrounding him, it is ordinarily a question of fact as to whether the employment of such person was or was not a contributing proximate cause of the injury. We are of the opin-

ion that the Industrial Board was justified in' drawing the inference that appellee's injury arose out of his employment."

Finally, in the case of *Burroughs Adding Machine Co. v. Dehn* (1942), 110 Ind. App. 483, 39 N. E. (2d) 499, the court considered the correctness of an award made by the Full Industrial Board to a sales supervisor whose duties required him to call upon customers of his employer to sell the employer's products and who was injured in an unexplained manner while walking upon a public street enroute to make a business call in behalf of his employer. In a well-considered and exhaustive opinion in which the authorities are reviewed, Judge Bedwell, speaking for the court, says:

> "The evidence before the Industrial Board was such that, in our opinion, the Industrial Board could reasonably have drawn the inference that the injury of the appellee was the result of an accident that arose out of the employment. This would be true whether the injury was received as the result of the fall, or whether the injury was received and the fall resulted therefrom. In either event, the causal connection is sufficiently established by the fact that the Industrial Board could reasonably have determined that the accident would not have occurred and the injury would not have been received if the employee had not been required, in performing the duties of his employment, to be traveling the particular street at the particular time, under the particular conditions and environment. In other words, from the evidence, the Industrial Board was entitled to determine that the employment of Dehn, in its conditions, its relationships, or its environment, caused or occasioned the accident from which his injury arose. Under such circumstances, his injury 'arose out of' his employment.
>
> "It is true that the more recent cases in this court, and in other courts throughout the country, have tended towards the establishment of the rule

that the employer will be held liable if the injury is the result of an accident that occurs while the employee is in the course of his employment. . . . There is nothing in the context of the act that prevents such a construction. Many of the limitations upon the granting of compensation under the act are judicial inventions wholly unjustified by the language of the act or the humane purposes of the Legislature in enacting it. There is nothing in the language of the act that requires an employee's injury by accident to arise out of the nature of the employment, nor is there anything in the language of the act that requires the risk to which the employee is subjected to be different from the risk to which the general public in the community is subjected. These limitations to the granting of compensation are but judicial accretions to the language of the act."

An exhaustive research fails to disclose an Indiana case where the factual situation is the same or similar to the facts shown by the record in the instant case. However, in the case of *Robinson* v. *State* (1918), 93 Conn. 49, 104 Atl. 491, the facts were as follows: "This is a proceeding under the Workmen's Compensation Act (Pub. Acts 1913, c. 138) by Julia A. Robinson, mother and dependent of Alderbert Robinson, deceased, against the highway department of the state. Robinson was an assistant foreman of the state highway department, and at the time of the injury which caused his death was employed as working foreman of a gang of workmen engaged in repairing the state highway between North Haven and Wallingford, by patching the same with broken stone and oil. He was at work on the easterly side of the middle of the roadway behind a dumpcart, which obstructed to some extent the view of travelers approaching from the north. While so engaged one Palmer drove an automobile delivery wagon in a southerly direction past the place where Robinson

was at work, and waved his hand to him, calling 'Hello, Dell.' Palmer was an old friend of Robinson, knew that he was working somewhere along the road, and intended to have a talk with him, if opportunity occurred. For this purpose Palmer stopped his car on the extreme westerly edge of the road, looked back for an instant, and saw that Robinson was walking diagonally across the road toward him, moving quickly, with his head down. While so crossing the road Robinson was struck and killed by a touring car driven southerly along the highway. The commissioner dismissed the claim on the ground that the injury did not arise out of and in the course of Robinson's employment, and the superior court on appeal ratified and confirmed the commissioner's award." In passing upon the question as to whether or not the dependent of the deceased employee was entitled to compensation, the Supreme Court of Connecticut said:

"Robinson was employed to supervise and inspect the work done by the rest of the gang, and also to assist in the work. If his injury arose out of and in the course of either branch of his work his dependent is entitled to compensation. There is nothing in the finding to indicate how long Robinson intended to talk with Palmer. We have only the bare fact that he started to cross the road, and the fair inference from the surrounding circumstances that his object was to engage in conversation with Palmer for some length of time, however short. The finding that Robinson also performed such physical labor on the road as was in his judgment necessary indicates that the due performance of his supervisory work did not require his continuous presence at any particular place on the roadway, and did not require his uninterrupted attention.

"The burden of proof was, of course, on the claimant to show that Robinson's injury arose out of and in the course of his employment. That it

arose out of his employment is not denied; and in this respect the case at bar differs from *Jacquemin* v. *Turner & Seymour Co.*, 92 Conn. 382, 103 Atl. 115, and from all the other cases cited, in which the injury did not arise from a risk incidental to the performance of the contract of employment.

"The injury also happened at a place where Robinson might reasonably be, consistently with the due performance of his supervisory duties, and in this respect the case at bar differs from O'Toole's Case, 229 Mass. 165, 118 N. E. 303, and from *Reed* v. *Great Western Ry. Co.*, L. R. App. Cas. 31, and from the numerous other cases where the injured employe was confined by the nature of his employment to some particular place or machine and had left that place or machine at the time of the injury.

"Finally, Robinson's employment as foreman did not require his uninterrupted attention. No doubt he was expected to work on the road in the larger intervals of his supervisory employment, but he was necessarily a foreman at all times, and his conduct must be measured accordingly.

"Upon the findings of the commissioner the case turns on the question whether one employed as foreman of a repair gang on a much-traveled state highway does or does not step outside of his employment as matter of law, because he starts to cross the road, in response to a friendly salutation, for the purpose of conversation, when there is no evidence as to how long he intended to talk, and no evidence that his starting to cross the road did interfere, or that his intended conversation would have interfered, with the due performance of his work as foreman. We think this question must be answered in the negative.

"There is error, and the case is remanded, with direction to set aside the judgment and to recommit the cause to the commissioner for an award in favor of the claimant."

In the instant case we do not believe that it is necessary for us to speculate, or indulge in surmise, as to

George Flemming's reason or motive in going to the place where he was fatally injured. The evidence discloses that he was upon his employer's premises where his duties required him to be and he met with a fatal accident during the course of his employment. He was not required to remain at any particular spot upon the employer's premises while waiting for Meer to appear with his truck, and the duties of his employment did not require his presence at any particular place at the time the fatal accident occurred and he was not neglecting or interfering with the performance of any duty required of him by his employment in going to the spot where the accident occurred.

Applying the principles announced in the foregoing authorities to the undisputed facts, we hold that there is sufficient evidence in the record to justify and warrant the Full Industrial Board in finding that Flemming would not have been at the place where the accident occurred except for his employment, and for this reason there was and is a causal connection between the conditions and environment of the employment and the resulting fatal accident, and also there is ample evidence to support the finding of the Industrial Board that the accident "arose out of the employment" as those words are used in the Indiana Workmen's Compensation Act.

The award is not contrary to law and must be affirmed with the statutory penalty of five per cent.

NOTE.—Reported in 65 N. E. (2d) 257.