KUNKEL, TRUSTEE OF HIGHLAND TOWNSHIP, ETC. *v.* ARNOLD

[No. 19,199. Filed May 15, 1959. Rehearing denied September 18, 1959. Transfer denied October 27, 1960.]

*Virgil J. McCarty, Thomas O'Connor,* both of Brookville, *William B. Weisell, Kenneth L. Kleinsmith* and *Locke, Reynolds, Boyd & Weisell,* of counsel, all of Indianapolis, for appellant.

*Murray, Mannon, Fairchild & Stewart, Richard W. Guthrie,* all of Indianapolis, and *Michael L. Bohland,* of Brookville, for appellee.

AX, J.—This appeal is predicated upon an action before the Industrial Board of Indiana by the appellee, a teacher-employee of the appellant, for compensation for injuries received in and resulting from a fall on January 25, 1956.

The appellee filed her Form No. 9 Application of Injured Employe with the Industrial Board for the Adjustment of Claim for Compensation on March 7, 1957, alleging that on January 25, 1956, she received injuries by reason of an accident arising out of and in the course of her employment by the defendant, now the appellant. The principal question at issue was whether or not the accidental injuries suffered by appellee arose out of and in the course of her employment with appellant.

The Application of the appellee was heard on the

17th day of October, 1957, by the Hon. R. M. Hennessy, a Hearing Member of the Industrial Board of Indiana, and on October 31, 1957, he found for the plaintiff, this appellee, and against the defendant, this appellant. Within the time provided by law an Application for Review before the Full Industrial Board was filed by this appellant, and after a Hearing before the Full Industrial Board on April 2, 1958, the said Full Board, on April 14, 1958, found that the plaintiff sustained an injury as a result of an accident arising out of and in course of her employment with the defendant, and awarded that the plaintiff, this appellee, recover from the defendant compensation at the rate of $33.00 per week, beginning January 25, 1956, and to continue during plaintiff's total disability and until terminated under the provisions of the Workmen's Compensation Law of the State of Indiana, said maximum compensation not to exceed $12,500.00, and further ordered reimbursement to plaintiff for $1,255.00 in medical and hospital expenses.

Appellant contends there is manifest error in the Findings of Fact and the Award of the Full Industrial Board of Indiana, in this, namely:

1. That the Award of the Full Industrial Board is contrary to law.
2. That the said Award is not supported by sufficient evidence.
3. That the evidence is not sufficient to sustain the Findings of Fact of the Full Industrial Board of Indiana.

On appeal to the Appellate Court from the Industrial Board of Indiana where the sole question presented was whether the injury arose out of and in the course of appellant's employment, the only proper assignment of error is that the award is contrary

to law. *Rohlwing* v. *The Wm. H. Block Co.* (1953), 124 Ind. App. 97, 115 N. E. 2d 450; *Scott* v. *Rhoads* (1943), 114 Ind. App. 150, 51 N. E. 2d 89. Hence, in this case at bar we will only consider whether or not the award is contrary to law.

A review of the pertinent evidence in this case shows the following: That on the date that the injury occurred the appellee, aged sixty-four years, was employed by the appellant, Trustee of Highland Township, as a public school teacher at Cedar Grove School; that the Cedar Grove settlement is predominantly Catholic; that there were approximately fifty pupils in the school and only two school teachers, one of whom was the claimant; that the public school building is located on grounds adjacent to and owned by a Catholic Church, said school building and grounds being leased from the Catholic Church by the appellant, trustee, for public school purposes; that there are both Catholic and Protestant students attending said public school; that it has been the custom for over forty years for the Catholic students to go to early Mass at the Catholic Church next door prior to the commencement of the daily school activities; that the school busses would start arriving at the playground of the school at approximately 7:15 A.M., but that school would not start until 8:30 A.M.; that a few minutes before 8:00 A.M. each school morning most of the Catholic students would line up on the school grounds and march over to the adjacent Catholic Church to attend Mass; that they would march over a sidewalk running from the school to the church; that the Catholic school children upon reaching the school grounds would sometimes go inside the public school building in times of inclement weather; that not all of the Catholic school children would go to early Mass, depending upon whether or not the public school busses got to school

before 8:00 A.M.; that the Catholic school children attending Mass would usually line up in two lines and march over to the Church in pairs side by side; that if one of the public school teachers went along to Mass, that teacher would exercise discipline over the marching children and keep them in proper line; that nothing was ever said by the trustee, appellant, that either of the two public school teachers were required as a part of their teaching duties to march over with the Catholic school children to Mass or to exercise any discipline over the children while they were marching over to Mass; that although the appellant, trustee, had knowledge of the fact that one of the two teachers would usually fire the furnace of the school and occasionally ring the bell signifying that it was time for Mass and the other teacher would usually go to Mass with the children and supervise them, still nothing was ever said by the appellant to the teachers either ordering them to do these tasks or to refrain from them; that occasionally the children would be marched in by the bigger children without any teacher being present or going over to the Mass.

The evidence further shows—that on the morning that appellee's injury occurred she slipped and fell at the head of the line of children who, it may be inferred, were in line preparatory to attending Mass; that at a point on the sidewalk leading between the church and public school which point was on the school grounds, there was ice caused by water from a nearby pump; that this ice was covered by two to three inches of snow; that the appellee warned the children in line about the slick spot, turned around, slipped and fell, causing her serious injuries that led to the finding of the Full Industrial Board that she was totally disabled.

Appellee, it appears from the briefs, was unable to appear and testify in her own behalf.

The Full Industrial Board after hearing argument of counsel and having reviewed all of the evidence in said cause, held that appellee's accidental injury arose out of and in the course of her admitted employment with the appellant. The three errors assigned by the appellant all are directed toward this finding and award based thereon, and the appellant's sole argument was that the activities of the appellee (public school teacher) at the time of the injury, namely, walking at the head of a column of children who attended school, on the way to Mass, was not an act of service, was not incidental thereto, and thus did not arise out of and in the course of her employment.

The Industrial Board is the trier of the facts and heard all of the evidence in this case as to the disability of appellee. Since the Full Board found as a matter of fact that appellee was totally disabled, and the question of disability was not raised by appellant, we will not discuss or disturb their finding as to the disability of appellee, but will consider herein only the question of whether or not the injuries of appellee arose out of and in the course of her employment.

In the course of her argument appellant attempts to show that the appellee was performing a duty or service, if any, for her church, and not for the school, her employer. Appellant further argues that neither going to Mass nor supervising some of the children on the trip to Mass could qualify as an act of duty or an act incidental to her employment.

In support of her argument, appellant urges that the activity in which appellee was engaged at the time of her injury could not constitutionally be made a part of her teaching activities—to do so would be in violation

of the constitutional doctrine of the separation of church and state recently reaffirmed by the United States Supreme Court, citing the cases of *People of State of Illinois ex rel. McCollum* v. *Board of Education* (1948), 68 S. Ct. 461, 333 U. S. 203; *Zorach* v. *Clauson* (1952), 72 S. Ct. 679, 343 U. S. 306.

We do not feel in this case that we are concerned with the separation of the church and state, and that by arguing this appellant is merely attempting to cloud the issue. The above cases cited by appellant are in no way in point with the case at bar in view of the evidence in this case.

In reviewing the evidence most favorable to the appellee herein, which this court is bound to consider, we find that there is no evidence in the record that the appellee was actually engaged at the time of her injury in leading part of the school children to a Catholic Mass. The factual situation and inference which the Board may have drawn from the evidence does not bear out the assertion of appellant that the appellee was "walking at the head of a column of children who attended school on the way to Mass." As the award was favorable to the appellee, no inference can be drawn to support this statement by the appellant. On the other hand, the Board might have drawn a reasonable inference that the appellee, teacher, was only engaged in supervising, directing and protecting the children from injury on the playground of the school.

The only other teacher at the school apparently arrived at the school before appellee and stated that she was "in the basement firing the furnace." From this the Board certainly and logically could conclude that the teachers at the school had duties to perform which required their presence at the school prior to the time that classes commenced. This same witness further

testified that appellee had come to the school that morning *to teach.* This evidence seems quite sufficient to warrant the Board's decision that appellee was on the school grounds within the period of her employment and in the course of her employment as a teacher.

Appellee, as before stated, did not appear nor testify in her own behalf. The only evidence that we can consider and which is favorable to the appellee is that at the time of her injury, while she was in the process of warning the children who were lined up on school premises about the ice on the sidewalk covered with snow, she turned around, slipped and fell on the ice.

There was evidence that the children in line did proceed to the Catholic Mass by themselves after the appellee was injured, but such fact and the testimony that it was a custom for one of the two school teachers to march with the children over to the Catholic Mass was not, under the evidence depicted here, of such conclusive character as to require the Board to infer that the appellee intended to march with the children to the Mass, or was actually engaged in marching with the children for such purpose.

The attorneys for both the appellant and appellee have dwelt at great lengths in their respective briefs on the assumption that the appellee at the time of her injury was engaged in leading about forty of the fifty children on the playground to attend the Mass. Although the Industrial Board might easily have assumed from custom that the appellee was supervising children on way to Mass, nevertheless, the evidence is silent as to the fact that she was actually leading the children to Mass. Since there was evidence that the teachers did not always accompany the children to Mass, the Industrial Board may very properly have inferred from the evidence that the appellee did not

intend to go with the children that morning, but was merely supervising them and protecting them from injury on the ice and snow covered sidewalk on the school grounds. However, as has been stated many times, this court is not a trier of facts, and can neither weigh the evidence nor indulge in presumptions. This was the province of the Industrial Board, and considering the evidence most favorable to the appellee, it appears that the appellee was injured on the playground of the school, more than one-half hour before classes started in the morning, that she was there "to teach," and that she was injured while engaged in warning part of the children about an existing icy condition of the sidewalk along which the children were walking.

The right of teachers to exercise supervision and discipline over the children when they reach the school grounds seems generally recognized:

"As a general rule a school teacher, to a limited extent at least, stands *in loco parentis* to pupils under his charge, and may exercise such powers of control, restraint, and correction over them as may be reasonably necessary to enable him properly to perform his duties as teacher and accomplish the purposes of education. . . ." 79 C. J. S., Schools and School Districts, §493, p. 442.

See also: 79 C. J. S., Schools and School Districts, §496, p. 445:

"The supervision and control of a teacher over a pupil, and of a school board, . . . are not confined to the schoolroom and school premises, but extend over the pupil from the time he leaves home to go to school until he returns home from school."

In the case of *Fertich* v. *Michener* (1887), 111 Ind. 472, our Supreme Court said:

"In the enforcement of all rules for the government of a school, due regard must be had to the health, comfort, age and mental as well as physical condition of the pupils, and to the circumstances attending each particular emergency; 'also' more care ought to be observed in looking after the comfort of pupils, and especially those of tender age, in extremely cold weather. . . ."

Under the school laws of Indiana, teachers are employed by written contracts: §28-4302, Burns' Ind. Stat. In the case at bar, the written contract of the appellee recites the following in part: "said teacher agrees faithfully to perform all the duties of a teacher in said school." There was of course, as appellant pointed out, no evidence that appellee was required to report to school prior to 8:30 A.M. when school actually commenced. However, the evidence reveals that nothing was ever said or done by the trustee, appellant, against the appellee or other teachers exercising supervision and discipline over school children while on the grounds of the school prior to actual class time. In fact, there is every indication that the trustee, appellant, approved and acquiesced in such action, since the evidence reveals that the trustee knew that it was a long-standing custom of over forty years for the teachers to supervise the children on the playground prior to their attendance at Mass.

It would be difficult and perhaps impossible to outline every duty that a teacher has to perform for her employer in the written teacher's contract. As is indicated in Small's Workmen's Compensation Law in Indiana, on page 165:

"A school teacher's work cannot be confined to the classroom and the actual instruction periods. . . ."

See 79 C. J. S., Schools and School Districts, §493, p. 442:

"The teacher's power and duty extend beyond the teaching and preservation of order and discipline to matters affecting the morals, ■ health, and safety of his pupils, and he may and should do everything he deems necessary to these ends, . . ."

See also the following from 78 C. J. S., Schools and School Districts, §237.b, p. 1194:

"It is the duty of a teacher in the public schools to exercise proper supervision over pupils in his charge and to exercise reasonable care to prevent injury to them."

Hence, we feel that in the case at bar the appellee, teacher, was performing a duty owed to her employer when she was supervising the children while on ■ the grounds of the school and was actually engaged in preventing injury to them, namely, warning them about the icy condition of the sidewalk, when she suffered her injury. She was on the playground of the school, where she was supposed to be and where she expected to be and where she was accustomed to be at that particular time of day.

In the case of *Broderick Co.* v. *Flemming* (1946), 116 Ind. App. 668, 65 N. E. 2d 257, the Court quoted with approval the following from the case of *In re Harraden* (1917), 66 Ind. App. 298, 118 N. E. 142:

"Where the employment of the injured person requires him to be at the place where his injury is received, and he is in fact at such place in ■ pursuance of the discharge of the duties of his employment, the risk thereby encountered is held to be incident to such employment,

though the injury may have resulted from conditions produced by the weather to which persons generally in that locality were exposed . . .

By reason of his employment he was at the place where he was injured. He was where his employment took him and the hazard of the icy street was incidental to such employment. . . . The facts admit of no other inference but that for his employment he would not have been in that locality at the time of his injury. His employment was therefore a contributing proximate cause of his injury. By reason of it he was exposed to a hazard which in all reasonable probability he would not otherwise have encountered."

From Small's Indiana Workmen's Compensation Law, page 159, it is stated that "the primary emphasis seems to be upon the time and place of the accident and its relation to what the employee was supposed to be doing at the time. While the fact that the workman may have been doing an act for *the benefit of his employer is not decisive standing alone, it will be noted that the courts have been extremely liberal in finding at least an implied authorization where the act was intended to be of benefit to the employer.* They have been equally liberal in finding an acquiescence on the part of an employer to acts which constitute a part of business custom. It has already been pointed out that to be within the course of employment a workman need not confine himself to the core matters of his work. *He may perform any act incidental thereto without departing from the scope of his employment.* This margin of incidental action affords room at least to consider whether or not the workman's acts were of benefit to the employer." (Our emphasis.)

In the case at bar, the evidence favorable to the appellee showed that it was a long-standing custom of over

forty years for one of the teachers to usually be on the playground each morning prior to the commencement of the day's classes. The appellant, trustee, knew this custom and, by his failure to forbid it, could be said to have acquiesced in it. In the case of *In re Loper* (1917), 64 Ind. App. 571, 116 N. E. 324, the Court went so far as to even allow compensation in a "horseplay" case:

"The employer, with knowledge of the facts, permitted such practice to continue. It was within his power to have prohibited it. By failing to do so, it became an element of the conditions under which the employe was required to work."

This case also repeated the rule that "courts construe them (workmen's compensation acts) liberally in favor of the employe." This case was upheld in *Kokomo, etc., Wire Co.* v. *Irick* (1923), 80 Ind. App. 610, 141 N. E. 796.

It may be stated most emphatically, we think, that the evidence and inferences do not compel us to adopt a conclusion contrary to that of the Board. And unless the evidence forces us to such opposite conclusion, the conclusion reached by the Board must stand.

Appellant's contentions that there was no relationship between the church service and the school activity, that appellee was engaged in a personal activity, and that the "act of service factor" is missing, seem, in our opinion, to be beside the point and not to conform to the factual situation portrayed by the evidence and inferences deductible therefrom.

The Award of the Board can be sustained, we think, upon the basis of custom acquiesced in by the trustee, appellant, so as to make the acts of the appellee at the

time of her injury incidental to and a part of her employment.

Thus, if the Board did draw and rely upon the inference that appellee was leading and directing or intended to lead and direct the children over to the church for religious purposes, we think such activity by appellee, so inferred by the Board, was an act so firmly entrenched by custom, knowledge and acquiescence of the various trustees, over a long period of time, as to become an act expected by the trustee to be performed by the teacher. The trustee testified that she went to the St. Patrick's Grade School and that it was the "custom" there to go to Mass before school "takes up" in the morning and that she *knew* "a similar practice" was observed at Cedar Grove. Now, under the evidence in this case, the "practice" consisted of more than just going to the church services. It included the assembly of the children on the school grounds, their lining up, and the direction, supervision, and control of the pupils by the teacher. There is no evidence that the trustee provided anyone else for the performance of the acts of such "practice" and the inference was thus afforded that the trustee, as had been the case over many years, relied upon the teacher for such performance; to say, as does appellant, that these acts of the teacher were personal to her and for her own benefit and not that of the school hardly fits the evidence and the logical inferences therefrom.

It would seem that the training and instilling in the children of a sense of orderliness, obedience to proper direction, regard for the rights of other children, and self-restraint should be as much a vital part of the school work as the book instruction while in class. Further, the evidence discloses that, at the very time of her accident, appellee was engaged in efforts to warn the

children of the existing danger of an icy sidewalk. Therefore, it is difficult to perceive that the aforesaid acts performed by appellee had no relation to her school work, were only for her own benefit, were of no benefit to the school, and were no part of her accepted duties as a teacher at the school, all as urged by appellant. The guidance and protection of the children attending the school certainly would seem to result in benefit to the school:

> "Where an employer merely permits an employee to perform a particular act, without direction or compulsion of any kind, the *purpose and nature of the act* become of great, often controlling significance in determining whether an injury suffered while performing it is compensable. If the act is one for the benefit of the employer or for the mutual benefit of both an injury arising out of it will usually be compensable; on the other hand, if the act being performed is for the exclusive benefit of the employee so that it is a personal privilege, or is one which the employer permits the employee to undertake for the benefit of some other person or for some cause apart from his own interests, an injury arising out of it will not be compensable." (Our emphasis.) *Smith* v. *Seamless Rubber Co.* (1930), 111 Conn. 365, 150 Atl. 110.

This was cited with approval in *Williams* v. *School City of Winchester* (1937), 104 Ind. App. 83, 92, 10 N. E. 2d 314.

Since the evidence submitted to the Board does not lead inescapably to a conclusion contrary to that reached by the Board the award must be affirmed. *Kraft* v. *Himsel Stock Yards* (1957), 127 Ind. App. 238, 139 N. E. 2d 569; *Wilson* v. *Indiana Gas & Water Company, Inc.* (1955), 126 Ind. App. 302, 130 N. E. 2d 498.

The award of the Industrial Board is affirmed with statutory increase.

Ryan, J., and Smith, J., not participating.

Cooper, C. J., concurs in result.

NOTE.—Reported in 158 N. E. 2d 660. Transfer denied, Jackson, C. J., in which Bobbitt, J., dissents.