E. R. BURGET CO., INC. ET AL. *v.* ZUPIN ET AL.

[No. 17,785. Filed December 22, 1948.]

*Henry L. Humrichouser,* of South Bend, attorney for appellants.

*M. Edward Doran* and *C. E. Manion,* both of South Bend, attorneys for appellees.

BOWEN, J.—This is an appeal from an award and judgment of the full Industrial Board awarding appellees, as dependents of decedent, Leo H. Zupin, compensation by reason of personal injuries which resulted in the accidental death of said decedent which the board held arose out of and in the course of his employment with the appellants.

The errors assigned for reversal are that the award is contrary to the evidence and that it is contrary to law.

The issue presented by this appeal raises the sole question whether the personal injuries from which decedent died were by accident which arose out of and in the course of his employment with the appellants.

The material facts are not in dispute, and the record discloses that decedent was employed as a sheet metal worker by the appellants doing business as the Hamilton Heating Company at the time of his death. On the morning of the day of his death he reported for work at the offices of the Hamilton Heating Company in the northwest part of South Bend, Indiana. He and one Emery Borders, to whom he was apprenticed, were assigned to a job in the northeast part of South Bend,

Indiana. He and Borders left the plant in Borders' car, for which Borders was paid mileage for its use by the company, taking with them certain metal and tools for their work. The decedent Zupin asked Borders if they couldn't go past the South Bend Central High School so that he could sign up for the sheet metal school that they have for veterans, since they were closed after working hours. To do this, it was necessary for them to drive south from the line of travel to the job site. Borders double-parked his car on the west side of Williams Street directly across the street and in front of the Central High School Vocational Shop. There was a truck back of Borders' car. The decedent Zupin got out of the right-hand door of the car and started to cross the street. He was struck by a Dodge car being driven south on Williams Street, and then was taken to the hospital where he later died of his injuries.

The evidence is clear that decedent had gone several blocks out of his direct route to the job to which he had been assigned by his employer, and had gotten out of the conveyance furnished by his employer to take him to his place of work, to cross the street for the purpose of enrolling in a vocational education course under the G. I. Bill of Rights. As a result of such enrollment he would have been able to collect a wage differential up to a guaranteed minimum of $50.00 per week.

At the hearing below, one Jacob Boersemann, the business agent for Sheet Metal Workers Union Local 164 in South Bend, Indiana, testified that the union had an apprenticeship plan in conjunction with employers which required 144 hours a year of related technical training for apprenticeship. The apprentice by such training learns to read blue prints, building codes, and

other matters related to his trade. He testified that an apprenticeship agreement was entered into between Mr. Zupin and Mr. Burget, the employer, prior to Zupin's death. This agreement was required to be approved by the Indianapolis Headquarters of the union and by the United States Government. At the time of Zupin's death, the witness testified that his application for apprentice training was in the hands of one Wilson of the Union Labor Committee, and one Regan who represented the United States Government, and that at Zupin's death, it was disposed of. The witness identified certain blank agreements, plaintiff's exhibits (1) and (2) which were admitted for the purpose of informing the board of the type of apprenticeship agreement and application for apprenticeship that the parties executed. The witness testified that exhibit (1) was executed by Mr. Burget, and that Zupin had signed the apprenticeship agreement and application. He did not testify as to the specific contents of such agreement and application, but stated that the blank spaces were filled in and all of the vacant places to the questions in regard to his employment were answered by the employer and he agreed to the terms of the vocational school, and that all the questions were answered and the application filled out as it should have been.

Decedent's widow testified that she talked to Mr. Burget at his place of business about her husband's employment with reference to his wages and training prior to his death. She stated that she asked him how her husband was to take his training, and that Burget told her that it was understood that at the time he was in his employment he was to take his training for veterans; and that she asked him about getting in on company time, and he said there was no special time set but that he had given his permission. She testified

that she asked Mr. Burget if her husband had been granted permission to be paid by the company, to be paid by him, and he said "yes"; that it had been granted when he filled out the papers; that he would have pay for the time he was off.

Our Workmen's Compensation Statute, Acts of 1929, ch. 172, § 2, p. 538, Acts of 1937, ch. 214, § 7, p. 1067; Acts of 1943, ch. 114, § 1, p. 361; Burns' 1940 Replacement, § 40-1202, provides that:

". . . Every employer and every employee except as herein stated, shall be presumed to have accepted the provisions of this act, respectively to pay and accept compensation for personal injury or death *by accident arising out of and in the course of the employment and shall be bound thereby. . . .*" (Our italics.)

The application of the above and foregoing language of plain and simple meaning has caused considerable difficulty to the various courts of this country and England in the judicial interpretation and construction thereof in conection with the facts of the particular cases. See: *Dover Navigation Co.* v. *Craig* (1939), 1940 Law J., 109 King's B. Div. 158; *In Re McNichol* (1913), 215 Mass. 497, 102 N. E. 697; *Cudahy Packing Co.* v. *Parramore* (1923), 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366; *Kansas City Fibre Box Co.* v. *Connell* (1925), 5 F. 2d 398, 43 A. L. R. 478; *In Re Betts, et al.* (1918), 66 Ind. App. 484, 118 N. E. 551.

While considerable confusion has been created in attempts by the various courts to prescribe a formula as a basis for their determination of the question whether particular accidents arose out of and in the course of the employment, the courts of our state seemed to have adhered to the following general principles of interpretation of such questions;

that an accident occurs "in the course of" the employment when it takes place within the period of the employment, at a place where the employee may reasonably be, and while he is fulfilling the duties of his employment, or is engaged in something incidental to it, while an accident "arises out of" the employment where there is a causal connection between it and the performance of some service of the employment, and causal relation is established when the accident arises out of a risk, which a reasonably prudent person might comprehend as incidental to the employment at the time of entering into it, or when the facts show an incidental connection between the conditions under which the employee works and the injury. *Jeffries et al* v. *Pitman Moore Co. et al.* (1925), 83 Ind. App. 159, 147 N. E. 919; *Tom Joyce 7-Up Co.* v. *Layman* (1942), 112 Ind. App. 369, 44 N. E. 2d 998; *Hayes* v. *Perry* (1946), 116 Ind. App. 590, 66 N. E. 2d 73.

From the record in this case the board could have properly found that the decedent entered into an employment relationship with appellant; that he was required under his contract of employment to enroll in a course of technical training under the Federal G. I. Training Program, under the so-called G. I. Bill of Rights, at the high school vocational shop; and, that he was to be permitted by his employer to take such training if necessary on company time, and that he suffered the injuries which caused his death in an accident while he was crossing the street to enroll in such school.

It would appear that this training for which he was enrolling was for duties which he performed under his contract of employment. He was also permitted to secure such training on company time, and as the ultimate result of his enrolling in such course, a wage

differential would be paid by the Federal Government which would insure him as a veteran a certain minimum wage.

In the present case, the accident, in which the decedent suffered the injuries from which he died, occurred within the time of his employment with appellant and while he was performing the duty of enrolling in the apprentice training school, which training, as the board could have properly found, was a part of his employment contract. We hold that upon the facts disclosed by the record herein such injuries and resultant death occurred by reason of an accident arising out of and in the course of his employment with the appellant. *Jeffries* v. *Pitman-Moore Co., supra; Burroughs Adding Mach. Co.* v. *Dehn* (1942), 110 Ind. App. 483, 39 N. E. 2d 499.

We recognize that it is not at all unusual for firms in industry to encourage employees to enroll in adult education courses and various types of training programs on their own and completely outside of working hours and the employment relationship. Consequently, we desire to distinguish the facts of the instant case from such situations, in that in this case the decedent was pursuing apprentice training for the particular work which he performed for the employer, and that he was engaged in such pursuit on company time with the company's permission and consent. Under such circumstances, it seems clear that such accident suffered by him arose out of and in the course of his employment, under a proper construction and interpretation of such clause in the statute.

We find no reversible error and the award of the full Industrial Board is, therefore, affirmed.

NOTE.—Reported in 82 N. E. 2d 897.