NOBLE ET AL. D/B/A NOBLE-LINCOLN MERCURY COMPANY
*v.* ZIMMERMAN ET AL.

[No. 29,597. Filed December 19, 1957. Rehearing
denied January 29, 1958.]

*William B. Weisell* and *Locke, Reynolds, Boyd & Weisell,* of Indianapolis, for appellants.

*Murray, Mannon, Fairchild & Stewart, James L. Murray* and *Richard W. Guthrie,* all of Indianapolis, for appellees.

LANDIS, J.—Appellees, as dependents of the decedent employee Zimmerman, filed application for compensation under the Workmen's Compensation Act (Burns' Ann. Stat. Sec. 40-1201 et seq.) growing out of his death while diving into the lake at the lakeside summer home of his employers after the conclusion of a business meeting had at such summer residence. The Industrial Board granted an award of compensation which was reversed by a divided Appellate Court, the majority opinion appearing in 137 N. E. 2d 233, and the dissenting opinion at page 240. The case is now before us on appellees' petition to transfer.

Appellants assert on this appeal that the award was contrary to law as there was no basis in the evidence to support the finding that decedent was injured and thereafter died from an accident arising out of and in the course of his employment.

The hearing before the Industrial Board was tried upon a stipulation of facts, the material portion of which was as follows (Tr. pp. 34-40) :

"That on July 14, 1953, Melvin Louis Zimmerman was employed by Noble-Lincoln Mercury Company, an automobile agency in Kokomo, Indiana, at an average weekly wage of $70.00 per week, and had been so employed by said company for six (6) weeks previously thereto, the first five (5) weeks as a mechanic in the Service Department, and the last week as Assistant Manager of the Service Department. In the normal operation of the said automobile agency business it was the custom to hold a meeting approximately once a month of the staff of the Service and Parts Departments after the regular business hours. The usual purpose of said meeting was to improve service and sales of said business. No additional salary or wages were paid to the members of the staff of the Service and Parts Departments for attendance at such meetings. The said automobile agency was a partnership consisting of Orvis L. Noble and Dorothy Noble, general partners.

"That the July meeting was arranged at a Kokomo hotel where dinner would be served and at said meeting discussions concerning points covered at a District Sales Meeting at Cincinnati sometime before was to be carried on. On the morning of July 14th, Orvis L. Noble, Managing Partner in said business, changed the meeting place from the hotel to the cottage and summer residence of Orvis L. Noble and his wife Dorothy Noble at Lake Freeman, Indiana, approximately 45 miles from Kokomo, Indiana. The change in the meeting place came about when Jerry Ball, Service Manager, suggested to Orvis L. Noble that because of the heat in town it would be pleasanter to hold the meeting at Lake Freeman and invite the wives and girl friends. The Service Manager, Jerry Ball, the Assistant Service Manager, Melvin Louis Zimmerman, the Parts Manager, Dick Huffman, and the Assistant Parts Manager, Palmer Timmons, were expected to and did attend said meeting, all of them leaving Kokomo, providing their own transportation, after the regular business closing hour of 5:00 P.M. Also invited were the wives or girl friends of the said employees and the girl friend of Jerry Ball did attend as did Evelyn R. Zimmerman, the wife of Melvin Louis Zimmerman. At the time the plans were made to shift the meeting place to Lake Freeman, it was understood by all of those attending that an evening meal would be furnished and served by Mr. and Mrs. Noble after the meeting and there would be an opportunity for swimming and rides in the 17 foot Chris-Craft Cabin cruiser which had been rented by Orvis L. Noble and Dorothy Noble with the cabin. Melvin Louis Zimmerman did take along to Lake Freeman his bathing suit anticipating that he would take advantage of the opportunity to go for a swim.

.    .    .    .    .    .

"That the cabin was on a bluff sitting above the lake with the property running down from the front door of the cabin to the lake front. There was a series of stairs leading from the cabin down the hill and more than half way down these stairs there was a landing and step-off onto the roof of

the boat house which roof was converted into a sun deck. The stairs continued down the few remaining steps to the level of the pier and the one wall of the boat house laid to the right of said stairs. At the bottom of the stairs the pier ran horizontally, principally to the left along the lake shore, at a level about 1 foot above the water line. To the right of the pier as one faced the lake was the doorway entrance into the boat house. The boat house had a wooden U shaped catwalk on the inside of the boat house on the three sides with no walk on the side facing onto the lake and through which side the boat entered and left the boat house. There was a door on the lake side but this had been partially raised. The boat normally was housed in this dock area within the boat house bounded on the three other sides by the wooden walk.

". . . On the previous day he [Orvis L. Noble] had damaged the propeller on the said cruiser in the course of operating his boat, striking said propeller on a rock, and this required the straightening of said propeller by a repair establishment on the lake.

"During the afternoon of July 14, Orvis L. Noble did put the propeller back on the propeller shaft but was not sure that he had installed it properly. All the time he was working on said boat and up to and including the times mentioned herein, the said boat was on a lift in the boat house out of the water, the bow of the boat facing the shore within a few inches of the catwalk on the shore side, and the stern was between 4 to 6 feet inside the partially open lake side of the boat house. The water throughout the area of the boat house was between 2½ and 3½ feet deep. The propeller, while on the said lift was approximately 1 foot above the water level. Inspection of and installation and repair work on the propeller would require that a person stand in the water within the boat house area of the aforesaid depth of 2½ to 3½ feet.

". . . Mr. Ball and Mr. Zimmerman were delayed by the necessity of calling for the two ladies who were making the trip with them and thereafter all four left Kokomo in Jerry Ball's

automobile. Jerry Ball paid the entire expense of his automobile for said trip and neither was reimbursed by Orvis L. Noble, nor was contribution made by Melvin Louis Zimmerman to said expense. When those traveling in Jerry Ball's automobile arrived at the cabin the meeting was already in progress on the sun deck and in fact that part relating to the Parts Department had been completed. Thereupon, Jerry Ball and Melvin Louis Zimmerman joined the meeting and during the next 15 minutes to half an hour the part of said meeting relating to the Service Department was conducted, all of which ended and the meeting broke up at between 7:15 and 7:30 P.M., Daylight Saving Time.

"That after Jerry Ball and Melvin Louis Zimmerman reached Lake Freeman, Orvis Noble related to all the men present at the meeting how he had installed the repaired propeller that day and the difficulties he had had in putting it on principally because to get the propeller on and the cotter key in place, he had found it necessary to back the not [sic] off a trifle causing some 'play' or looseness in the propeller attachment. Jerry Ball thereupon suggested that it ought to be checked before they went for a boat ride, to which suggestion Orvis Noble assented. After the meeting broke up, Mr. Timmons and Mr. Huffman went back to the cabin where they had a bite to eat preparatory to making an early departure from the lake.

". . . Melvin Louis Zimmerman was going to take a swim to cool off, and since Jerry Ball had blisters on his hands and expressed a preference of not getting in the water and working on the propeller with his sore hands, Melvin Louis Zimmerman told Jerry Ball that he would look at the propeller and fix it if it were necessary. He thereupon changed into his bathing suit inside the boat house, at which time Orvis Noble also was inside the boat house and Jerry Ball was outside the boat house on the pier in the company of the ladies. While Melvin Louis Zimmerman was putting on his bathing suit, he told Orvis Noble that he would look at the propeller and tighten it down

if it needed it, to which statement Orvis Noble answered 'Okay.' This was the first information Orvis Noble had that Melvin Louis Zimmerman was going to check the propeller.

"That Melvin Louis Zimmerman did not regard this proposed work on the propeller as one of his duties with Noble-Lincoln Mercury Company, he was not ordered to make such inspection by Orvis L. Noble, Dorothy Noble, or any supervisor of his on behalf of said partnership company, and he, Melvin Louis Zimmerman, regarded his intended work on the propeller as more or less of a friendly gesture to Orvis Noble.

"That after Melvin Louis Zimmerman had put on his bathing suit, he directed an inquiry to Orvis L. Noble while both were inside the boat house, as to the depth of the water. At the time, Orvis L. Noble was standing on the walk at the bottom of the U or along the side of the boat house facing the hill. At said time Melvin Louis Zimmerman was standing on the catwalk inside the boat house along the side adjoining the pier about half way between the ends of said boat house. Melvin Louis Zimmerman moved towards the opening at the end of the boat house facing the lake and inspected said opening. On the side facing the lake the opening extended up from the water line from 4 to 5 feet, leaving a 4 or 5 foot opening or clearance. Before Orvis L. Noble could tell Melvin Louis Zimmerman anything other than that depth of the water was about 2½ feet in the area between the walks, Melvin Louis Zimmerman stepped back two or three steps away from the opening and then made a racing dive towards and through said opening, he arched his body to negotiate the maneuver of passing through the opening. He neither touched the bottom, the extended down wall of the boat house or any other thing in making the dive but by the act of suddenly arching his body and throwing back his head and neck, he did fracture a cervical vertebra, which injury subsequently resulted in his death on February 8, 1954. The water depth at the opening was about 3½ feet and shortly beyond there was a drop-off or ledge to deeper water. Melvin Louis Zimmerman was an experi-

enced swimmer and diver and negotiated said diving maneuver with good form and without striking any object as aforesaid."

Appellants contend decedent's act of diving from the boathouse of appellants out into the swimming area of the lake in which decedent injured himself, not by striking any object, but by arching his back and throwing back his head and neck, so as to fracture a cervical vertebra, was not an act of duty for his employers, nor a compensable recreational activity.

There is no question but that decedent attended the business meeting at his employers' lake cottage as a part of his employment duties. The recreational activity following the meeting and consisting of eating, swimming, and boating, had been prearranged by the employer as indicated in the invitation to the meeting. The employer entirely arranged the outing, furnished the premises and facilities and controlled their use.

The general rule as to the liability of the employer for recreational activities has been stated by Schneider[1] as follows:

"Generally, injuries suffered by an employee while watching, participating in, or going to or coming from recreational activities sponsored in whole or in part by the employer, are not compensable, since such injuries are usually sustained while the employee is not performing any duty for which he has been either expressly or impliedly employed. In other words the injury cannot ordinarily be said to have resulted from an accident arising out of and in the course of the employment.

"A distinction is made, however, in those cases where the recreation which caused the injury, either directly or indirectly, was sponsored by the employer as a matter of business and not because

1. Schneider's Workmen's Compensation Law, Vol. 6, ch. 25, p. 519.

of altruistic motives. That is, the employer exercised control or domination over the recreation for the purpose of developing better service and greater efficiency among the employees, thereby reaping a direct business benefit from the recreations sponsored."

Four Indiana cases have been cited by appellant as denying compensation in recreation cases,[2] but it is believed they are distinguishable from the case before us.

In the *Tom Joyce 7 Up* case, the employee was injured about midnight in a traffic accident when he was returning from bowling on the "7 Up Team" organized by one of appellant's distributors. The court conceded the inference could be drawn that some possible benefit might have occurred to the employer from advertising of its product by the bowling activities, but concluded that an employee while on his way home from such activities was not engaged in activities incidental to his employment.

In the *Mishawaka Rubber* case the employee was drowned while fishing on the employer's premises at the noon hour, but the employer had not sponsored or encouraged any program of recreation on the company premises, including fishing in the river.

In the *Block Co.* case the evidence was conflicting as to whether the department store-employer had authorized one of its buyers to entertain a visiting sales lady representing a merchandise house when the injury occurred. The Industrial Board denied compensation and the Appellate Court affirmed, stating the court on ap-

2. *Tom Joyce 7 Up Company* v. *Layman* (1942), 112 Ind. App. 369, 44 N. E. 2d 998; *Mishawaka Rub. & Woolen Mfg. Co.* v. *Walker* (1949), 119 Ind. App. 309, 84 N. E. 2d 897; *Rohlwing* v. *The Wm. H. Block Company* (1953), 124 Ind. App. 97, 115 N. E. 2d 450; *Wagner* v. *Buescher Band Instr. Co.* (1954), 125 Ind. App. 103, 122 N. E. 2d 618.

peal could not weigh the evidence or disturb the Industrial Board's finding if there was competent evidence to support it.

*The Buescher Band Co.* case was one in which the employee was injured at an annual picnic attended by the company's employees but sponsored by an unincorporated association, the board of directors of which was composed of two representatives of the employer. The employer did not restrict the activities of the association or its expenditure of funds except to stipulate that all employees, whether members of the association or not, could attend the annual Christmas party and picnic. The plant was closed the day of the picnic but all transportation was furnished by members of the association. The employer did not furnish the recreation grounds. There the Industrial Board's denial of compensation was affirmed on appeal, the court citing the employee's cited case of *O'Leary* v. *Brown-Pacific-Maxon* (1951), 340 U. S. 504, 71 S. Ct. 470, 95 L. Ed. 483, for the rule that the court on appeal will look to the evidence and necessary inferences supporting the finding of the trier of the facts.

The above cited decision of the U. S. Supreme Court in *O'Leary* v. *Brown-Pacific-Maxon,* held compensable an employee's death which occurred on the island of Guam when deceased, who had spent the afternoon at employer's recreation center, plunged into the water in attempting a rescue of two persons not in the employer's service, undertaken in forbidden waters outside the employer's premises. The court held the evidence and inferences were sufficient to support the Deputy Commissioner's award of compensation. The opinion of the U. S. Supreme Court recognizes the rule that workmen's compensation cases are not confined to the common law conceptions of the

scope of employment. Citing: *Cardillo* v. *Liberty Mut. Ins. Co.*, 330 U. S. 469, 481, 91 L. Ed. 1028, 1038, 67 S. Ct. 801; *Waters* v. *William J. Taylor Co.*, 218 N. Y. 248, 251, 112 N. E. 727, 728, L. R. A. 1917A 347. In the court's words (340 U. S. 506, 507, 71 S. Ct. 471, 472, 95 L. Ed. 486):

> "The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. *Thom* v. *Sinclair* (Eng.) [1917], AC 127, 142, [Ann. Cas. 1917D 188—H. L.] Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose."

The recent case of *Jewel Tea Co.* v. *Industrial Com.* (1955), 6 Ill. 2d 304, 128 N. E. 2d 699, 928, contains an extensive discussion of the recreational activity cases from many states and holds that injuries received by an employee while playing softball in an intracompany league competition *after working hours and off the company premises* were compensable as arising out of and in the course of employment.

Other cases of a similar nature and in which the employer's sponsored recreational activities were held sufficiently connected with the employment to render the injuries within the Compensation Act are— *Kenney, Respondent* v. *Lord & Taylor, Inc.* (1930), 254 N. Y. 532, 173 N. E. 853, in which employee attended dinner given by dry goods store-employer and was injured while dancing after dinner; *Linderman* v. *Cownie Furs* (1944), 234 Iowa 708, 13 N. W. 2d 677, in which salesman was drowned on fishing trip paid for by employer for winning sales contest; *Fagan* v. *Albany Evening Union Co.* (1941), 261 App. Div. 861, 24 N.

Y. S. 2d 779, where newspaper carrier boy was drowned while attending picnic arranged by employer's branch manager; *Kelly* v. *Hackensack Water Co.* (1952), 23 N. J. Super. 88, 92 A. 2d 506, where employee was killed by falling into ravine on annual outing sponsored by employer; *Du Charme* v. *Columbia Engineering Co.* (1954), 31 N. J. Super. 167, 106 A. 2d 23, where employee after work had ceased at 12:30 p.m. remained to receive a ham given gratuitously by employer as a bonus, and was injured in fall on stairway from employer's plant.

In the instant case before us for decision the Industrial Board granted compensation to an employee's dependents for injuries occurring during a recreational activity immediately following a business meeting called at the employers' premises at their lakeside summer home.

According to the stipulation of facts, in the normal operation of appellants' automobile agency it was customary to hold meetings once a month of the Service and Parts Departments after the regular business hours; that "[T]the usual purpose of said meeting was to improve service and sales of said business"; that "[N]no additional salary or wages were paid to the members of the staff at such meetings." The stipulation states the meeting place was changed by one of the two partner-employers from the hotel at Kokomo to a point some 45 miles distant at employers' lakeside cottage and summer residence at Lake Freeman, and that "because of the heat in town [in July] it would be pleasanter to hold the meeting at Lake Freeman and invite the wives and girl friends." The stipulation further says, decedent, who was Assistant Service Manager, was "expected to and did attend the meeting"

and that "it was understood by all of those attending that an evening meal would be furnished and served by . . . [appellants-employers] after the meeting and there would be an opportunity for swimming and rides in . . . [employers'] 17 foot Chris-Craft Cabin cruiser."

There is little doubt a reasonable inference from this stipulation of facts would be that the dinner following the meeting and any boat ride in employers' Chris-Craft cruiser at employers' solicitation were reasonably incident to the business meeting and employment on the hot July night. Had deceased choked on a fish bone at the employers' furnished repast or drowned during the employers' offered boat ride, would it not be a reasonable inference that such activities following the meeting were sponsored by the employer as a matter of business and for developing better service and efficiency among the employees rather than being simply altruism? Doubtless the recreational inducements were utilized by the employers on a hot night in July to get better attendance at a business meeting which had as its admitted purpose the improvement of service and sales of appellants'-employers' automobile business. It would not take a profound student of human nature to infer or deduce that the chances of a successful turnout at such a business meeting, for which the employees did not receive additional compensation, would be enhanced by having it at a cool lake cottage rather than in a hot hotel room. In fact, the stipulation almost expressly says this in reciting that the Service Manager Ball told one of the partner-employers before the site was selected, "that because of the heat in town it would be pleasanter to hold the meeting at Lake Freeman."

And, if eating, boating, and swimming were reasonably incident to the employment, how about the related pursuit of diving into the water?

The stipulation states the opportunity for swimming and boating was understood by all those attending, and that decedent took a bathing suit with him to the lake anticipating taking a swim. Decedent was not forbidden from diving by anyone, and it would be taking great liberties with the record evidence for this court on appeal to conclude that no reasonable inferences warranted the Industrial Board in concluding that decedent in being invited to swim *was not invited to dive*. The nature of the dive is not believed material as decedent was stipulated to be an experienced diver and swimmer, and only by a freak accident did he, in arching his back in making a dive with good form (and without striking any object), cause the fracture of a cervical vertebra resulting in his death. Indeed, the record does not indicate such an accident could not have occurred anywhere while diving. We further believe the evidence in this case that deceased had stated with the employers' acquiescence that he would fix the propeller on the boat (which was to be used for any boat ride earlier offered as an inducement by the employers) and which was in the boat house from which he dived, could also give rise to the inference that decedent's act in diving into the water was reasonably connected with or incident to his employers' business and recreational outing at their lakeside premises.

We realize it is sometimes argued in recreational cases that if the court holds the recreational activity to be within the Compensation Act, it is exercising too great a degree of liberality in construing the act. However, in recent years it has become increasingly evident that employers are more and more utilizing recrea-

tional programs for their employees, and properly so, in aiding and promoting better business relations with persons in their employ, calculating the same to benefit the employers' best business interests.

In reviewing recreational cases from many jurisdictions, the Supreme Court of Illinois in the recent *Jewel Tea Company* case, *supra,* said (6 Ill. 2d 304, 316, 128 N. E. 2d 699, 705) :

"As defendant has quite properly argued, in accordance with established precedent it is not the province of this court to extend by judicial legislation the terms of the Workmen's Compensation Act so as to convert it into a system of health insurance. However, this court cannot adjudicate rights in a vacuum, and predicate decisions on legal concepts divorced from practical realities. As stated in *Juergen Bros. Co.* v. *Industrial Commission,* 290 Ill. 420, 125 N. E. 337, such laws should be given a practical construction and application. Therefore, inasmuch as there was evidence in the record before the Industrial Commission from which it could be reasonably inferred that plaintiff's participation in the defendant company . . . [recreational activity] under the circumstances was an incident of his employment, the injuries he sustained while playing in the particular game could properly be found to arise out of and in the course of his employment."

In the case before us the evidence is stronger than in many recreation cases, as the stipulation of the parties expressly recites as a reason for connecting the business and recreational activities "that because of the heat in town it would be *pleasanter to hold the meeting at Lake Freeman."* (Emphasis supplied.) How could it be made to appear more clearly that the employers' sponsored recreation at the latter's lakeside premises was the inducement for a better or more successful business meeting, admittedly held to improve

sales and service of employers' business, and necessarily intended to aid the employers' business so as to be incidental to the employment?

We believe from the foregoing treatment of the authorities that the facts stipulated to by the parties and the necessary inferences therefrom were sufficient for the Industrial Board, as the trier of the facts, properly to conclude that the decedent's injury and death arose out of and in the course of his employment.

The transfer of this cause from the Appellate Court to this Court is accordingly granted and the award of the Industrial Board is affirmed.

Emmert, C. J., and Arterburn, J., concur.

Bobbitt, J., dissents, in which Achor, J., concurs.

DISSENTING OPINION

Bobbitt, J.—I cannot agree with the majority opinion herein. *First:* for the reasons stated in the majority opinion of the Appellate Court as it appears in 137 N. E. 2d 233, and for the further reasons given in the concurring opinion by Crumpacker, Judge, as it appears in 137 N. E. 2d at page 239.

The stipulation of facts is fully set out in the majority opinion of the Appellate Court and is, under the circumstances herein, conclusive between the parties, and the Industrial Board, *Princeton Mining Company* v. *Earley* (1944), 114 Ind. App. 343, 346, 51 N. E. (2d) 382, and upon this court.

I concur fully with the following statements which appear in the Appellate Court opinion by Pfaff, Judge, at page 237 of 137 N. E. 2d, as follows:

"Appellees admit 'that deceased was not in the act of performing any contemplated duty for his employer at the time of his fatal accident,' . . . .

.    .    .    .

"Even if it be considered that the recreational activity of swimming was afforded by the appellant employers as a means of improving good relations with their said employees, and, hence, to be deemed incidental to their employment, yet it seems clear that the decedent voluntarily stepped aside from the specified recreational activity to engage in and undertake a self-determined and dangerous act, wholly disassociated in character and degree from the recreational activity of swimming.

"Appellees further insist that the true test for determining the compensability is the extent of control exercised by the employer over the activity. In support thereof they rely upon the exceptions to the general rule, as set out in Schneider's Workmen's Compensation, Vol. 6, p. 519, and Larson's Workmen's Compensation, Vol. 1, p. 326. The difficulty experienced in attempting to apply the general statements made in said treatises to the facts before us is that said authors speak of the sponsorship by the employer of the recreation 'which caused the injury.' As we have endeavored previously to make apparent, the recreation, which the appellees claim was 'controlled' by the appellants, was not the cause of decedent's fatal injury. The cause of decedent's injury, as established by the stipulation of facts, as we have already said was his own personal, unannounced, unsuggested and self-determined act of attempting an unusual and hazardous dive through the small opening in the boat house wall. Its origin rested with the decedent, not the appellants. It did not have its origin in any facility or activity, recreational or otherwise, offered or afforded by appellants. It must seem certain that appellants had no control or compulsion over an unexpressed idea or mental concept of the proposed dive originating within and known only to the mind of the decedent, and spontaneously carried out by him. Such act, entered upon and carried out by decedent in the

manner stipulated, could not, we think, be reasonably considered incidental to the decedent's employment with appellants."

I also concur with the following statements which appear in the concurring opinion by Crumpacker, Judge, at page 239 of 137 N. E. 2d, as follows:

"It seems to me that this case falls within the general rule as stated in Schneider's Workmen's Compensation Law, Vol. 6, p. 519:

" 'Generally, injuries suffered by an employee while watching, participating in, or going to or coming from recreational activities sponsored in whole or in part by the employer, are not compensable, since such injuries are usually sustained while the employee is not performing any duty for which he has been either expressly or impliedly employed. In other words the injury cannot ordinarily be said to have resulted from an accident arising out of and in the course of the employment.'

"The sole exception to this rule is stated by the same authority in the same volume and page as follows:

" 'A distinction is made, however, in those cases where the recreation which caused the injury, either directly or indirectly, was sponsored by the employer as a matter of business and not because of altruistic motives. That is, the employer exercised control or domination over the recreation for the purpose of developing better service and greater efficiency among the employees, thereby reaping a direct business benefit from the recreations sponsored.'

"I can find nothing in the evidence that brings this case within the exception to the general rule. A regular meeting of the staff of the appellants' service and parts department was transferred from Kokomo to their summer home at Lake Freeman 'because of the heat in town it would be pleasanter to have the meeting at Lake Freeman and invite the wives and girl friends' after which 'there would be an opportunity for swimming and boating.' After the business meeting was over the decedent was upon his own devices. The Lake was

there and he could swim in it if he chose but he was not under the slightest compulsion from his employer to do so or even to remain upon the premises. There is nothing in the evidence which remotely suggests that the recreational facilities incidental to the appellants' cottage on the Lake was extended to their employees on this occasion with any idea of boosting employee morale or increasing their work efficiency and thereby bestowing a business benefit upon the employers. On the contrary the evidence impels me to the conclusion that the appellants extended the recreational facilities of their summer home to a limited group of their employees with the sole purpose of affording them a pleasant evening and that their motive in doing so was purely altruistic."

These statements are decisive of the only real question here presented.

*Second:* However, because of the far-reaching effect of the majority opinion, I feel impelled to state my further reasons for dissenting.

This court, and at times the Appellate Court, has in recent years been susceptible to the drift of certain courts which have followed the rule enunciated in *O'Leary* v. *Brown-Pacific-Maxon* (1951), 340 U. S. 504, 95 L. Ed. 483, 71 S. Ct. 470, and which has stretched the application of Workmen's Compensation Laws, under the guise of liberal construction, to cover situations beyond the wildest dreams of the original proponents of the law. It might be well to look again at the fundamental keystones of the Act.

The Workmen's Compensation Act, Burns' Ann. St., §40-1201, et seq., does not make the employer an insurer of the safety of his employees at all times. The purpose of the Act was to compensate for personal injury or death by accident *arising out of and in the course of the employment.*

I fully recognize that the words "arising out of" and "in the course of the employment," as used in the Workmen's Compensation Act should be liberally construed to accomplish the humane purpose of the Act.[1] However, the construction given these words by the majority opinion is liberality run riot. It makes the employer an insurer of the employees' safety, while attending any social or recreational function given or sponsored by any of their superior officers or employers, without limitation and regardless of any connection with the employment.

Our courts of appeal have many times, with some degree of uniformity, defined "arising out of" and "in the course of the employment."

The general accepted definition of the former phrase is stated in *Empire Health, etc. Ins. Co.* v. *Purcell* (1921), 76 Ind. App. 551, 555, 132 N. E. 664, and reaffirmed and approved in *Williams* v. *School City of Winchester* (1937), 104 Ind. App. 83, 95, 10 N. E. 2d 314, and is as follows:

> "An accident is said to arise out of the employment when there is a causal connection between it and the performance of some service of the employment. The causal relation is established when the accident is shown to have arisen *out of a risk* which a reasonable person might have comprehended *as incidental to the employment at the time of entering into it*, or when the evidence shows an incidental connection *between the conditions under which the employee works* and his resulting injury." (My italics.)

This general rule is reaffirmed in the following cases: *Mishawaka Rub. & Woolen Mfg. Co.* v. *Walker* (1949),

---

1. *Hayes* v. *Perry* (1946), 116 Ind. App. 590, 66 N. E. 2d 73; *The Studebaker Corp.* v. *Jones* (1937), 104 Ind. App. 270, 10 N. E. 2d 747; *In re Ayers* (1918), 66 Ind. App. 458, 462, 118 N. E. 386; *Holland, etc. Sugar Co.* v. *Shraluka* (1917), 64 Ind. App. 545, 116 N. E. 330.

119 Ind. App. 309, 84 N. E. 2d 897; *E. R. Burget Co.* v. *Zupin* (1948), 118 Ind. App. 644, 649, 82 N. E. 2d 897; *Broderick Co.* v. *Flemming* (1946), 116 Ind. App. 668, 675, 65 N. E. 2d 257; *Tom Joyce 7 Up Company* v. *Layman* (1942), 112 Ind. App. 369, 375, 44 N. E. 2d 998; *American Steel Foundries* v. *Czapala* (1942), 112 Ind. App. 212, 215, 44 N. E. 2d 204; *Montgomery* v. *Brown* (1941), 109 Ind. App. 95, 27 N. E. 2d 884.

There is no evidence from which the Industrial Board could have found that the injury of the deceased herein arose "out of a risk which a reasonable person might have comprehended as incidental to his employment at the time of entering into it." Neither is there any evidence which shows any connection between his injury and the "conditions under which" he worked. It must then follow that the accident herein cannot be said to arise out of decedent's employment.

The latter phrase has been uniformly held in this and other States to mean that an injury occurs in the course of the employment within the meaning of the Workmen's Compensation Act when it takes place within the period of the employment, at a place where the employee may reasonably be, or have a right to be, and while he is engaged in performing the duties of the employment or something incidental thereto. *Prudential Life Insurance Co.* v. *Spears* (1954), 125 Ind. App. 21, 118 N. E. 2d 813; *D. A. Y. Construction Co.* v. *Smallwood* (1937), 104 Ind. App. 277, 10 N. E. 2d 750; *Tom Joyce 7 Up Company* v. *Layman, supra* (1942), 112 Ind. App. 369, 374, 44 N. E. 2d 998; *Young* v. *Dept. of Labor & Industries* (1939), 200 Wash. 138, 93 P. 2d 337, 339, 123 A. L. R. 1171, 1174; *Atlantic & Pac. Tea Co.* v. *Indus. Com.* (1932), 347 Ill. 596, 180 N. E. 460, 462, 83 A. L. R. 1208, 1210.

In *McNicol's Case* (1913), 215 Mass. 497, 498, 499, 102 N. E. 697, L. R. A. 1916A, 306, the Supreme Court of Massachusetts laid down the rule which has become the leading authority on the definition of the phrase "arising out of" and "in the course of the employment." In this case it is said that an injury is received " 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." The court further said that an injury, in order to warrant a payment of compensation, "must both arise out of and also be received in the course of the employment. Neither alone is enough."

Following the causal connection rule, a line of cases in Indiana hold that there must be some causal connection between the injury and employment so that the injury results from some risk inherent in, or incidental to, employment in order to justify compensation. *Kokomo, etc. Wire Co.* v. *Irick* (1923), 80 Ind. App. 610, 141 N. E. 796; *In re Loper* (1917), 64 Ind. App. 571, 116 N. E. 324; *Mishawaka Rub. & Woolen Mfg. Co.* v. *Walker, supra* (1949), 119 Ind. App. 309, 84 N. E. 2d 897; *Broderick Co.* v. *Flemming, supra* (1946), 116 Ind. App. 668, 65 N. E. 2d 257; *Montgomery* v. *Brown, supra* (1941), 109 Ind. App. 95, 27 N. E. 2d 884.

It would seem that these cases do not attempt to establish a new rule for the determination of compensable injuries, but only express in general terms the same thing that is said more clearly and concisely in the rules defining "arising out of" and "in the course of the employment" as are set out hereinabove.

It is time that we checked our course lest we get lost in the sea of unrestrained liberal construction. The statute is the chart of our course and it is well to consult this occasionally to remind ourselves that the Legislature has prescribed definite limits beyond which we have no authority to go, even under the guise of liberal construction.

When the act which causes the injury belongs to or is connected directly, or indirectly, with what the employee has to do in fulfilling his contract of service, it is incidental thereto. *Bryant, Adm'x.* v. *Fissell* (1913), 84 N. J. L. 72, 78, 79, 86 Atl. 458, 461. See also: *Brady* v. *Oregon Lumber Co.* (1926), 117 Ore. 188, 243 Pac. 96, 99, 45 A. L. R. 812, 818.

The incident which causes the injury must arise out of, or because of, the employment, such as acts which are necessary to the life, comfort and convenience of the workman, *while at work,* though not necessarily or technically acts which are inherently a part of the duties of employment of the worker. *Broderick Co.* v. *Flemming, supra* (1946), 116 Ind. App. 668, 675, 65 N. E. 2d 257; *Capital Paper Co.* v. *Conner* (1924), 81 Ind. App. 545, 547, 144 N. E. 474.

Such acts as obtaining a drink of water and, under certain conditions, refreshments, and attending to natural wants, have been held to be incidental to the employment. *Whiting-Mead Co.* v. *Indus. Acc. Com.* (1918), 178 Cal. 505, 173 Pac. 1105, 5 A. L. R. 1518.

Appellees admit "that the deceased was not in the act of performing any contemplated duty for his employer at the time of his fatal accident." Nor was his dive into the lake in any way connected with the repair of the propeller on the boat, which is immaterial here, because his dive was a wholly independent and volun-

tary act of the deceased, as evidenced by the fact that he dived away from the boat and into the deep water outside of the boat house.

Can it be said that the act of the deceased in diving into the water was necessary for his life, comfort or convenience while at work as Assistant-Manager of appellant's Service Department? This question provides its own answer.

Decedent's work ceased with the close of the meeting of the Service and Parts Department. There is no evidence from which the Industrial Board could have reasonably found that the decedent, at the time of his fatal accident, was engaged in the performance of any of the duties of his employment, or that he was doing anything incidental thereto.

As it heretofore appears, our courts in Indiana draw a definite distinction between "out of" and "in the course of" employment as used in the Workmen's Compensation Act, and both elements must be shown to exist before an award can be made for any accidental injury. Neither is sufficient without the other. *Citizens Independent Tel. Co.* v. *Davis* (1951), 121 Ind. App. 20, 23, 94 N. E. 2d 495 (Trans. denied, 229 Ind. 217, 97 N. E. 2d 490) ; *Macshir Co.* v. *McFarland* (1934), 99 Ind. App. 196, 200, 190 N. E. 69; *Davies* v. *Robinson* (1932), 94 Ind. App. 104, 111, 179 N. E. 797.

Certainly in a case such as the one at bar, when neither of the required elements—"arising out of" or "in the course of"—is shown, compensation cannot be allowed unless some other theory can be found under which an award may be justified.

The question of whether or not the death herein is compensable must be determined from the facts and

circumstances presented by the stipulation in the record before us.

Since the injury to the deceased herein did not, under the circumstances as shown by the stipulation, come from a hazard or risk of the employment and did not occur while he was performing some act of his employment, may compensation then be awarded upon the theory that such injury was incidental· to the employment?

Appellees assert that the recreational activity afforded by appellant Noble was "for the improvement of their personal relations with their employees" and "the benefit was dual and under the authorities in such cases the activity is sufficiently incidental to be compensable" and it is apparently upon the theory that the injury which caused the death of the deceased herein was incidental to his employment, that the majority opinion is grounded.

While not controlling, because each compensation case depends upon its own facts, an examination of cases in which the injury was allegedly incidental to the employment in this and in other States, where the factual situation, in some degree, was similar to the facts in the case at bar may shed some further light on the reasons for my conclusion in this case.

I have undertaken this task with the basic principle in mind that "there can be no compensation for injuries arising out of purely personal activities not directly related to the employment." *Matter of Davis* v. *Newsweek Magazine* (1953), 305 N. Y. 20, 110 N. E. 2d 406, 409. See also: *Williams* v. *School City of Winchester, supra* (1937), 104 Ind. App. 83, 92, 10 N. E. 2d 314; *Mishawaka Rub. & Woolen Mfg. Co.* v. *Walker, supra* (1949), 119 Ind. App. 309, 313, 84 N. E. 2d 897;

*Ocean A. & G. Corp.* v. *Industrial Com.* (1927), 32 Ariz. 265, 257 Pac. 641.

In *Matter of Wilson* v. *General Motors Corp.* (1949), 298 N. Y. 468, 84 N. E. 2d 781, in deciding whether an injury arose "out of" and "in the course of" employment, the Court of Appeals of New York, at page 784 of 84 N. E. 2d said:

"Personal activities of employees, unrelated to the employment, remote from the place of work and its risk, not compelled or controlled by the employer, yielding it neither advantage nor benefit, are not within the compass of the Workmen's Compensation Law. Nor is it of any operative consequence that the employer acquiesced in, or contributed some financial aid to, such activities. The slight support thus given by the employer, without attendant advertising or consequent business advantage, should be accepted for what it really was, a gratuitous contribution to its employees' social and recreational life." Citing authorities.

In *Matter of Davis* v. *Newsweek Magazine, supra* (1953), 305 N. Y. 20, 110 N. E. 2d 406, compensation was not allowed to the widow of a deceased who was traveling on a combination vacation and business trip and upon arriving at Biloxi, Mississippi, hot and tired, prepared to take a swim. Instead of entering the water from the beach, he chose to dive from a pier in unfamiliar waters, and as a result suffered injuries from which he died.

It was there asserted that a phase of deceased's employment was that of a tourist which exposed him to risks incident to that status, and that his attempt to get relief from his fatigue under the circumstances might be regarded as an act in the course of his employment, because, if successful, it would have been of some benefit to his employer, in that decedent might

more promptly have sent a better article. At page 409 of 110 N. E. 2d, the New York Court of Appeals said:

"We think it is quite clear that decedent, in engaging in the hazardous act of diving off the pier in strange waters for a swim, was indulging in a personal recreational activity in nowise related to his employment, except as all such activity, in refreshing mind and body, better fits the individual for his daily labors. His death was not 'work-connected,' it did not occur in such a way as to bring it within any of the categories above mentioned, in which awards have been allowed; it did not, therefore, arise 'out of and in the course of the employment' and is not compensable."

In *Stevens* v. *Essex Fells Country Club* (1948), 136 N. J. L. 656, 57 A. 2d 469, the club permitted its caddies to use its links for playing golf on Monday mornings, and gave war stamps to those making the best score. A caddy, while so playing, was struck by a ball driven by another caddy-player. The injured caddy contended that his injury was compensable because it had a causal relation to his employment and was of mutual benefit to his employer (the Country Club).

In determining the question of compensation the court, at page 471 of 57 A. 2d, said:

"The accident was not the result of a risk inherent in or incident to the employment. Indeed, the employee was not in the pursuit of the master's service when the injury was sustained; he was not then engaged in the fulfillment of his contract of service, but rather in the exercise of a mere privilege accorded by the employer to use the golf course for his own recreation and instruction in the principles and the practice of the game. The proofs afford no basis whatever for the application of the principle of 'mutual benefit.' There is nothing to suggest that the arrangement was so designed. The benefit, if any, which enured to the

employer was purely incidental and too remote to sustain an inference that such use of the club's facilities was in contemplation as an integral part of the service. It was not a thing bargained for; nor was it in the view of the parties as a consideration for the contract or a measure related to the qualifications of the players for service as caddies. The risk of danger was not one to which the employee was exposed because of the nature of his employment; what he was doing at the time was not the performance of duty under the employment contract, nor was it reasonably incidental to such service; and thus the requisite causal relationship is lacking. Generosity alone to one's employee does not render one liable for compensation under the act for injury suffered while in the enjoyment of the favor, even though there is reciprocal good will and a heightening of morale. Such is not within the ambit of the employment."

*McManus's Case* (1935), 289 Mass. 65, 193 N. E. 732, was also a caddy case. There the caddy was injured while waiting on the first tee. In determining the question of compensation, the Supreme Court of Massachusetts, at pages 732-733 of 193 N. E. said:

"While he waited he did so for a purpose of his own and not for anything having to do with his employment or connected with it.

.   .   .

" . . . the facts show that the claimant was standing upon the tee waiting for an opportunity to play golf for his own pleasure. There was no evidence which would warrant a finding that at the time the injury was received he was engaged in any work for his employer. His employment did not require him to be at the tee, and he was not engaged in any work or aiding in any way the performance of duties for which he was employed."

In *Clark* v. *Chrysler Corporation* (1936), 276 Mich. 24, 267 N. W. 589, the Supreme Court of Michigan held not compensable an injury sustained after work by a

member of the employer's police force, while playing basketball in the gymnasium maintained by the employer, which furnished a paid instructor, kept a record of those in attendance, and the vice-president of which had stated that it was his desire that the employees attend at least three classes each week.

The court, at page 589 of 267 N. W. said:

"It may be true that the benefit derived by a user of the place not only tended to improve him physically but, as well, to create a more friendly relation between employer and employee, but such physical betterment and emotional result, while desirable, do not attach to the contract of employment."

A factual situation very similar to that in the case at bar existed in *Lehman* v. *B. F. Nelson Manufacturing Co.* (1935), 193 Minn. 462, 258 N. W. 821. There the company, from time to time, held safety rallies in the evening in a building owned by the company and not far from its plant. In order to promote attendance at these meetings the company furnished entertainment that commenced after the safety lectures. As respondent was leaving the hall after the entertainment had been concluded he was attacked by loiterers. At page 822 of 258 N. W. the court said:

"The employees got no compensation for attending the rally, nor does it appear that they suffered any penalty whatever for not attending. It was given in both the interests of the employer and the employee, and, of course, the employees were free to leave the premises where the rally was held at any time whether during the rally or the subsequent entertainment. The injured employee in this case stayed with his family for the social affair purely for his and their enjoyment and recreation. They were guests of the employer, but in no way engaged in any employment. The lecture given at the safety rally had terminated some hours before

respondent attempted to leave the hall and was injured."

In *State Young Men's C. Asso.* v. *Industrial Comm.* (1940), 235 Wis. 161, 292 N. W. 324, it was held that a medical student employed by the State Young Men's Christian Association as counselor to assist the first aid medical director at plaintiff's summer camp for a stated sum, room and board, with the privilege of using the camp's recreational facilities when not actively occupied in performing his duties, was not entitled to compensation under the Workmen's Compensation Act for injury sustained while playing tennis on the camp court, as he was exercising personal privilege apart from the employer's interests and performing no duty. At page 325 of 292 N. W. the court said:

"At the time he was exercising a personal privilege apart from any interest of the employer, the nature of which cannot be considered as being for the benefit of the employer or for the mutual benefit of both. His play was without direction or compulsion of any kind which required him to take part, and no duty was imposed on him. Nor would he be discharged for failure to participate." See also: *Liberty Mut. Ins. Co.* v. *Ind. Acc. Com.* (1952), 39 Cal. 2d 512, 247 P. 2d 697.

In *Guiliano* v. *O'Connell's Sons* (1927), 105 Conn. 695, 136 Atl. 677, 56 A. L. R. 504, the employers, while engaged in building a road, rented a barn in the vicinity of the job, and gave the employees the privilege of sleeping in it if they desired, without charge. The barn caught fire while appellants were sleeping there, and as a result they were injured. The injury was held not to be compensable and in the course of the opinion the court, at page 678 of 136 Atl., said:

"When, however, the employer says to the employee, after his day's work is done, 'you may grind

your ax upon my wheel,' the employee in accepting this proffer is not in the course of his employment, for that has ceased; he is fulfilling, not the duties of his employment, but his own personal desire. Privileges such as this, though they would not have been accorded him unless he had been in the service of his employer, cannot be held to be incidents of his employment."

And, further, at page 681, said:

"Nor have we found case or authority which has held that an employee, who at his own option, after his day's work is ended, is upon his employer's premises, by the permission of the employer, is while there within the scope of his employment so that his employer would be held liable to pay him compensation for an injury then happening to him."

The Appellate Court of this State has recently been faced with similar questions. *Mishawaka Rub. & Woolen Mfg. Co.* v. *Walker, supra* (1949), 119 Ind. App. 309, 84 N. E. 2d 897, presented a factual situation where the decedent, who was employed by appellant as a supervisor and assistant foreman of the loading dock, was drowned while fishing on his lunch hour. At page 313 of 119 Ind. App. the court said:

" . . . an accidental death arises out of the employment when there exists a causal connection between it and the employment. To be compensable, the employment must be in some way responsible for the accidental injury, which was drowning in the instant case, and, while the more recent cases do not hold that an employee's injury by accident in order to be compensable must arise out of the nature of the employment, the injury suffered must be in some way incidental to the employment."

In *Rohlwing* v. *The Wm. H. Block Company* (1953), 124 Ind. App. 97, 115 N. E. 2d 450, the employee was injured while entertaining a sales representative. In sustaining an award of the Industrial Board denying

compensation the Appellate Court, at page 104 of 124 Ind. App., said:

> "It is not sufficient to show employment and an injury during the period of employment, but the employee must go further and show that the injury had its origin in a risk connected with the employment and that it flowed from that source as a rational consequence."

In *Prudential Life Insurance Co.* v. *Spears* (1954), 125 Ind. App. 21, 118 N. E. 2d 813, the Appellate Court held that where an employee, who was employed by an insurance company as an insurance solicitor, salesman, and debit collector, parked his automobile in front of the home of one of his account debtors and went across the street to a cabinet company and asked for, and received, a small piece of wood which he said he wanted to make a knife handle, and while leaving the cabinet company's premises he received fatal injuries, such injuries were not the result of an accident "arising out of and in the course of employment" and his death was not compensable, and at page 24 of 125 Ind. App. said:

> "We find nothing in the record before us to establish, or from which it could be reasonably inferred, that decedent's said personal mission involved acts necessary to his life, comfort, or convenience. Nor do we perceive from the record any circumstances rendering reasonable a presumption of continuity of employment activity."

The rule by which we must be guided in this case and which I would reaffirm is succinctly stated in Workmen's Comp. Law of Indiana by Small, at page 159, as follows:

> "In addition to the limitation that a compensable injury or death must arise out of the employment, there is the further directive that it must arise in the course of the employment. In other words, it

588

must arise within the period of employment, at a place where the employee may reasonably be, and while the workman is fulfilling the duties of his employment, or is engaged in something incidental thereto. The primary emphasis seems to be upon the time and place of the accident, and its relation to what the employee was supposed to be doing at the time."

Appellee's injury to be compensable must have resulted from a risk pertaining to his employment. The mere fact that deceased was at the place where the injury occurred (at the cottage) because of his employment, is not alone sufficient to justify compensation. *In re Betts* (1918), 66 Ind. App. 484, 487, 118 N. E. 551; *Container Corp.* v. *Industrial Com.* (1948), 401 Ill. 129, 81 N. E. 2d 571, 573; *Great American Indem. Co.* v. *Indus. Com.* (1937), 367 Ill. 241, 11 N. E. 2d 9, 11; *Liberty Mut. Ins. Co.* v. *Ind. Acc. Com.*, *supra* (1952), 39 Cal. 2d 512, 247 P. 2d 697, 699; *Campbell* v. *Secretary of State* (1952), 335 Mich. 237, 56 N. W. 2d 84, 85; *Ramseth* v. *Maycock* (1956), 209 Ore. 66, 304 P. 2d 415, 417; *Persons et al.* v. *Stokes* (1954), 222 Miss. 479, 76 So. 2d 517, 519; *Cf: Bobertz* v. *Board of Education of Hillside Twp.* (1947), 135 N. J. L. 555, 52 A. 2d 827. See also: 58 Am. Jur., Workmen's Compensation, §211, p. 719.

The evidence in the record here is undisputed that the deceased was, at the time of his injury, engaged in the personal activity of "taking a swim"; that swimming was unrelated to his contract of employment as Assistant Manager of the Service Department of appellants (it is admitted that the "deceased was not in the act of performing any contemplated duty for his employer at the time of his fatal accident") ; that he was "remote from the place of work"; and that the swimming was purely invitational, was not controlled by

the employer nor was deceased compelled to participate or to accept the invitation to swim. In fact two of the four employees attending the meeting left immediately after the dinner and neither accepted the invitation to swim nor to take a ride in the cabin cruiser.

The "personal activity in which the deceased was engaged was not directly related" to his employment, nor was it necessary to his life, comfort or convenience while performing the duties of his employment. At the time of the injury the deceased was not engaged in the fulfillment of any provision of his contract of service. He received no pay for attending the meeting at the lake, nor does it appear that there was any penalty for not attending. The meeting at which affairs of the company were discussed had adjourned sometime before deceased entered the boat house to "take a swim." It is crystal clear from the record here that he stayed for the social part of the evening solely for his and his companion's enjoyment and recreation as guests of the Nobles. Even though the invitation to eat, swim, or take a boat ride might have created a more friendly feeling between the deceased and his employer and might have improved the morale of those participating, these activities were in no way related to his contract of employment and any benefit which the employer-appellants might have received was purely incidental and too remote to render them liable for any injury received by deceased while taking advantage of their hospitality.

While I do not believe that the facts in the record before us are sufficient to bring this case within the exception which covers injuries arising out of recreational functions, however, since appellees have relied upon cases which fall within this exception, it seems proper to examine the rule as it has been developed and

take note of certain essential elements which must be present before compensation for such injuries will be allowed.

Schneider, Workmen's Comp., Vol. 6, ch. 25, §1594, p. 519, sets out four elements, any of which, if present, may render an injury compensable.

(1) Sponsorship of the recreation by the employer as a matter of business and not because of altruistic motives.

(2) Control or domination of recreation for the purpose of developing better service and efficiency among the employees.

(3) The injured employee must be either required to participate in the recreation, or his employment must have so contemplated.

(4) Recreation causing the injury must be a regular occurrence so as to become a part of the daily life and routine of the employee.

Larson's Workmen's Compensation Laws, Vol. 1, p. 328, combines the essential elements into three requirements as follows:

"Sec. 22.00. Recreational or social activities are within the course of employment when

"(a) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or

"(b) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or

"(c) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life."

It seems to me that these rules state the general requirements for compensable injuries arising out of

recreational functions and should be approved and adopted by this court.

Considering the facts surrounding the injury of the deceased herein, it is difficult to see how, even if we consider that such injury arose out of a recreational function, that the act which the deceased committed was "required or contemplated, by his contract of employment, for the benefit of his employer directly or indirectly." There is no evidence in the record here to show, nor is there any from which a reasonable inference could be drawn, that the activity in which the deceased was engaged at the time the injury occurred, was on the premises during a lunch or recreation period as a regular incident of employment; that the swimming was sponsored by the employer as a matter of business; that the deceased was required to take advantage of the opportunity to swim; or that his employer derived any substantial benefit from the invitation to swim (activity) beyond the intangible value of improvement in the employee's health and morale that is common to all kinds of recreation and social life.

Thus, even when we pursue appellees' theory of the case, as I comprehend it from their brief, we are forced to the conclusion that the lack of evidence to support an award under the facts in this case is so complete and conclusive as to force a conclusion contrary to that reached by the Industrial Board, hence the award is contrary to law and it should be set aside. *Williams* v. *School City of Winchester, supra* (1937), 104 Ind. App. 83, 95, 10 N. E. 2d 314.

Employers are charged under the Workmen's Compensation Act with providing for the care of their employees who are injured by some accident arising out of and in the course of their employment, but if this

court persists in constantly enlarging the scope of the Act, it may eventually fall from the force of its own expansion.

The ultimate effect of decisions such as the one by the majority here is ably and succinctly stated by the Supreme Court of Colorado in *Industrial Com. v. Murphy* (1938), 102 Colo. 59, 76 P. 2d 741, at page 742, 115 A. L. R. 990, as follows:

> "It may be regretable that this young man cannot be compensated under the terms of the act, but its provisions must not be pushed beyond the limits of their purpose, nor its funds diverted to those not clearly entitled thereto, and the object of their creation be thus frustrated. Kindness to one may well be cruelty to many. Allowance of this claim could but serve as a warning to employers that they may concern themselves with the social life and recreation of their men, or permit their officers to do so, or contribute to efforts to lighten life, only under penalty of liability for every accident and injury arising from such activities, however remote from the employment itself."

I have not discussed the authorities relied upon by appellees because (1) the factual situations in all of them vary in some material respect from that in the case at bar; (2) they generally involve injuries growing out of recreational functions which, as I have heretofore said, have no application here; and (3) the cases upon which appellees rely contain one or more of the essential elements which, under the rules above stated, are necessary to bring the activity from which the injury arose within the contract of employment.

In my opinion and for the reasons above stated, this case was correctly decided by the Appellate Court. The majority opinion of the Appellate Court contravenes no ruling precedent of this court, nor does it decide a new

question of law incorrectly. I would deny the petition to transfer.

Achor, J., concurs in this opinion.

NOTE.—Reported in 146 N. E. 2d 828.